(No. 40379.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOHN PICKETT, Appellant.

*Opinion filed January 19, 1968.*

WARD, J., took no part.

GETER & GETER, of Chicago, (HOWARD D. GETER, SR. and HOWARD D. GETER, JR., of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JOEL M. FLAUM, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion· of the court:

The defendant, John Pickett, was tried in a bench trial in the circuit court of Cook County for gambling on an indictment which charged him with possession of policy tickets and other similar devices in violation of section 28—1(a)(8) of the Criminal Code. (Ill. Rev. Stat. 1965, chap. 38, par. 28—1.) He was found guilty and sentenced to 5 years probation, the first 30 days to be served in the county jail. Because of the constitutional issues raised defendant appealed directly to this court.

The defendant contends that there was an illegal search made of his person and effects, that the trial court made an unconstitutional interpretation of section 108—1(d) of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, chap. 38, par. 108—1(d)); that the offense for which he was convicted was a misdemeanor; and that, evidence having been previously taken against him before a magistrate in the municipal division, his trial in the circuit court of Cook County constituted double jeopardy.

On March 18, 1966, the defendant presented a plea in bar and a motion to suppress evidence before the judge who heard the case. The plea in bar was overruled. On the motion to suppress the defendant testified that on October 29, 1965, he was arrested by Officers Waller and Watson, that the arrest took place at Central Park and Jackson Boulevard in Chicago about 9:30 P.M. after the officers

had been following him in his automobile several blocks. He stated that the officers pulled him over to the curb and said, "Hello, John," to which he said, "Hi," and that officer Waller asked him if he had anything on him and he didn't reply. He was not searched but they searched the car and found certain "evidence" stuck in between the seats of the car; thereupon they put him in the squad car and searched his person and recovered some more "evidence." He was then arrested and taken to the station. He said he was traveling on Jackson Boulevard at approximately 30 miles per hour at the time of the arrest; that the officers didn't ask him to nor did he produce a driver's license. They issued a ticket to him for no driver's license and speeding. He stated that the officers found the policy slips stuck down in the seat of the car and that the officers couldn't see them.

Officer Watson testified that he was working with Officer Waller in an unmarked squad car when they stopped the defendant after they had clocked him at 41 miles per hour in a 30 miles per hour speed zone; that he asked the defendant for his driver's license but he didn't produce one. Watson stated that he approached the passenger side and flashed a light into the vehicle and saw a package of policy writings or tickets on the front seat between him and the passenger side. He then asked the defendant if he had any more policy tickets or money and the defendant said he did. He also testified that both he and Officer Waller knew the defendant, and that Waller had arrested him before, that the stop was made for an ordinary traffic violation; that they took him back to the squad car after seeing the contraband on the front seat; and that the personal search of the defendant was made at the squad car after he, Watson, had recovered the contraband from the car.

Officer Waller testified that they chased defendant's automobile on Jackson Boulevard and after signalling him to stop he observed the defendant use his hand as if pushing something back and that he told his partner to watch

him. The defendant had stepped out of the automobile when Waller asked him for his driver's license, and defendant said he had none. At that time Officer Watson came over with a large quantity of policy tickets. Upon questioning, the defendant stated that the money in his possession was policy money and the defendant was taken to the station. Officer Waller, however, testified that after the defendant got out of the automobile, he asked for his driver's license and since he didn't have any, he searched him and arrested him, but the search was for his own protection and revealed a bulge in defendant's pocket which felt like papers and money; that he thereupon removed it. He said the search of the automobile was conducted by his partner, Watson. He testified that prior to this action he knew the defendant from previous gambling arrests. The court found the arrest was valid and held the search valid under section 108—1 (d) and denied the motion to suppress, and the defendant was convicted and sentenced as heretofore mentioned.

Section 108—1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, chap. 38, par. 108—1) reads in part as follows: "When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of: (a) Protecting the officer from attack; or * * * (d) Discovering any instruments, articles, or things which may have been used in the commission of, or which may constitute evidence of, an offense."

Defendant contends that this section must be interpreted as applying only to instruments, articles or evidence which are connected with the purpose for which the person is arrested and states that the trial judge interpreted the section to permit a general search for any instruments, articles, or things which may be used in the commission of an offense and which may constitute the evidence of another offense for which the defendant was not arrested. He then argues that

such an interpretation means that whenever an arrest is made, even for a traffic violation, that officer has the right under this section to search for evidence of any crime whether or not it is related to the offense for which he is arrested and even though the search is not made for the protection of the police officer, and that as so interpreted the section is unconstitutional.

We said in *People* v. *Brown*, 38 Ill.2d 353, at pages 356-7:

"In the *Lewis* case a majority of the court felt compelled by the language of the United States Supreme Court in *Preston* v. *United States*, 376 U.S. 364, 11 L. Ed. 2d 777, to invalidate a search of an automobile without a warrant after a defendant has been taken into custody and the car impounded.

"Subsequent to *Lewis*, however, the United States Supreme Court clarified the *Preston* rule in *Cooper* v. *California*, 386 U.S. 58, 17 L. Ed. 2d 730. In *Cooper* the court upheld the search of the glove compartment of an automobile which had been impounded by the police despite the fact that the search occurred one week after the defendant had been arrested for a narcotics violation. The search was upheld, according to the court, because it 'was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained.' While the facts in *Cooper* are distinguishable from those in *Lewis* and in the present case, we believe that decision is a clear indication that the mere fact that the defendant is in custody or his automobile impounded does not in itself make a search unreasonable. We have reached the same conclusion in *People* v. *Jones*, 38 Ill.2d 428.

"We therefore feel free to consider the reasonableness of this search even though it occurred after defendant was arrested and taken into custody. As stated in *Cooper* v. *California*, 386 U.S. 58, 17 L. Ed. 2d 730, 733-734: 'It is

no answer to say that the police could have obtained a search warrant, for "[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." *United States* v. *Rabinowitz,* 339 U.S. 56, 66, 94 L. Ed. 653, 660, 70 S. Ct. 430.' Accordingly, we have examined all the facts concerning the arrest and the search in an effort to determine the reasonableness of the search. *People* v. *Watkins,* 19 Ill.2d 11.

"As we have noted earlier in this opinion, the defendant admits in his brief that the arresting officers were justified in suspecting that they were not dealing with a mere traffic violator. We agree. An examination of the record indicates that the arresting officers had valid reason to suspect, at the very least, that the automobile driven by the defendant had been stolen. It is the duty of police officers when confronted with circumstances giving an appearance of criminal activity to investigate in an effort to determine whether such criminal activity, in fact, exists. This court has sustained such searches, even after the defendant has been picked up as a mere traffic law violator, where the circumstances reasonably indicate that a more serious crime has been committed. (*People* v. *Thomas,* 31 Ill.2d 212; *People* v. *Faginkrantz,* 21 Ill.2d 75.) Faced with the situation as it existed at the time of the arrest, we find that the search of the trunk by the police officers in an attempt either to ascertain the ownership of the automobile or to determine whether a crime had, in fact, been committed was not unreasonable. Consequently, the trial court did not err in denying Brown's motion to suppress. See *People* v. *Jones,* 38 Ill.2d 428."

Thus we see it is the reasonableness of the search, whether it applies to the person or the vehicle, which is of primary importance and not whether the search occurred before or after the defendant was arrested and taken into custody. As stated above, "searches, even after the defendant has been picked up as a mere traffic violator, where the circumstances reasonably indicate that a more serious crime

has been committed" have been sustained by this court.

We reached a similar conclusion in *People* v. *Jones,* 38 Ill.2d 428, and went on to consider the permissible extent of the search, stating at page 435:

"In developing the compass of the fourth and fifth amendments the United States Supreme Court had invalidated the seizure of private papers and other items of purely evidentiary value even under a search warrant on the theory that only the instrumentalities by which a crime is committed, the fruits of crime, weapons by which escape might be effected, and contraband could be validly seized. (*Gouled* v. *United States,* 255 U.S. 298, 65 L. Ed. 647.) However, in *Warden, Maryland Penitentiary* v. *Hayden,* 387 U.S. 294, 18 L. Ed. 2d 782, the 'mere evidence' rule set forth in *Gouled* was rejected by the court as 'wholly irrational,' stating at 18 L. Ed. 2d 791-792: 'The premise in Gouled that Government may not seize evidence simply for the purpose of proving crime has likewise been discredited. The requirement that the Government assert in addition some property interest in material it seizes has long been a fiction, obscuring the reality that government has an interest in solving crime. Schmerber settled the proposition that it is reasonable, within the term of the Fourth Amendment, to conduct otherwise permissible searches for the purpose of obtaining evidence which would aid in apprehending and convicting criminals. The requirements of the Fourth Amendment can secure ·the same protection of privacy whether the search is for "mere evidence" or for fruits, instrumentalities or contraband.' "

Thus we see that it is reasonable within the constitutional limitations to conduct an otherwise permissible search for the purpose of seeking evidence which would aid in apprehending and convicting criminals, and that the limitations in *Gouled* as to searching for mere evidence is no longer the law.

Although there are some discrepancies between the

testimony of Officers Watson and Waller, it is clear that the trial judge chose to believe the testimony of these officers rather than that of the defendant on the motion to suppress. Officer Watson stated that he saw the policy tickets in open view on the front seat of the car and "It is well-settled law that observation of that which is open to view does not constitute a search, so that seizure of articles in plain view cannot be considered unreasonable * * * ." (*People* v. *Tate,* (1967) 38 Ill.2d 184.) Discovery of the contraband in open view, of course, constituted probable cause for the arrest of the defendant for gambling and once arrested for gambling, a search of the defendant for further contraband would be proper. Even assuming that the defendant had been arrested for a traffic violation and searched for weapons immediately before Officer Watson observed the policy slips, it is not conceivable that it would be necessary to rearrest the defendant. In any event the defendant's person was searched and researched so soon after the discovery of the contraband in open view in the car that the search must be considered as contemporaneous with his arrest. The search of defendant's car was not conducted as a result of the search of the defendant's person, but as the defendant himself testified, he was searched after the evidence had been removed from the car. The search in question was contemporaneous with the development of probable cause which justified a search aimed at discovery of the instrumentalities of gambling. Although not involving contraband in open view in an automobile, we held in *People* v. *Thomas,* 31 Ill.2d 212, *cert.* denied, 380 U.S. 936, 13 L. Ed. 2d 824, that where a defendant was arrested for a minor traffic violation, a narcotics conviction based upon evidence found by police officers after the search of defendant's person and automobile was proper. Defendant claimed an illegal search and seizure by the police because the police, while determining his identity and fitness to drive, learned that he had no driver's license and had just been released

from jail. That case is somewhat similar to the present case in that this defendant was arrested for a minor traffic violation, was known by the officers to be involved in gambling, and had no driver's license.

Under the facts and circumstances of this case we do not believe the search was unreasonable and conclude that the trial court did not interpret section 108—1 (d) as permitting an unreasonable search.

Defendant's remaining contention is that a violation of section 28—1 of the Criminal Code, pertaining to gambling, is punishable as a misdemeanor, and that the defendant was placed in jeopardy in violation of section 10 of article II of the Illinois constitution when evidence was received against him in the municipal division of the circuit court of Cook County, and that said trial or hearing is a bar against prosecution in the criminal court of Cook County. However, the State points out that a violation of section 28—1 of the statute is punishable as a felony and that a hearing in the municipal division was nothing more than a preliminary hearing which led to the indictment of the defendant. This precise issue was determined adversely to defendant's contention in *People* v. *Chatman*, (1967) 38 Ill.2d 265, and the defendant's contention is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.