2 Ill. App.3d 927 (1971)
274 N.E.2d 688
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
FRANCIS LEONARD ROBERTS et al., Defendant-Appellants.
No. 70-38.
Illinois Appellate Court  Third District.
October 26, 1971.
*928 Marshall E. Douglas, of Moline, for appellants.
James N. DeWulf, State's Attorney, of Rock Island, for the People.
Judgment reversed.
Mr. JUSTICE SCOTT delivered the opinion of the court:
The defendants were tried by jury for burglary and theft resulting in the conviction of defendant Campbell for the crime of theft and defendant Roberts for both burglary and theft.
On October 25, 1969, both defendants, accompanied by defendant Roberts brother, were in an automobile on the country road when they were stopped by a deputy sheriff of Rock Island County, one Calvin Wainwright. A search of the automobile resulted in finding certain tools purportedly stolen from the Paul J. Gruneau Company.
The defendants contend that the trial court erred in refusing to suppress evidence seized from the defendants on the night in question. In advance of trial defendants filed their motion to suppress and hearing was had thereon resulting in the court's denial of said motion. A review of the testimony both at the preliminary hearing and at the trial is required for proper understanding of this decision.
On the night of the arrest Wainwright, while on routine patrol, stopped at the 3M Company near the scene where the arrest was made and talked to one Stephens, a guard at the plant. This was around 11:00 P.M. Stephens advised Wainwright that there were a couple of cars and a lot of activity out on Old Trail Road. This road is a public road, although lightly traveled, apparently leading behind the 3M plant and near a spot where certain construction was being performed for Commonwealth Edison Company by the Paul J. Gruneau Company. The road had been patrolled by the Sheriff's police for some time, their purpose being to look for teenagers who might be drinking. Wainwright testified that as he proceded down the Old Trail Road he observed the lights come on an automobile approximately 200 yards ahead of him; that *929 the car had been parked and as he approached the lights turned on and the automobile proceeded toward him. He then turned on his flasher light and stopped the car. At that time he had not been advised that a crime had been committed and to his knowledge a crime had not been reported in the vicinity. When he observed the other car proceeding toward him he turned on his flasher light and the other automobile came to a stop with the front bumpers of each car almost touching. He further testified that had the other automobile attempted to elude him he would have made every effort to stop it. He further testified that Roberts then stepped out of his automobile, removed a pair of gloves, threw them in the back seat of the car, and he and Roberts talked while standing between the two cars. Roberts produced his drivers license for examination and when asked by Wainwright what he was doing in the area he advised Wainwright that he was just looking around. Wainwright then proceeded to defendants' car, where he observed the defendant Campbell and defendant Roberts' brother. He testified that he used his spotlight on the car, a station wagon, and noticed certain boxes in the rear of the wagon. Roberts advised him there were tools in the boxes that he used at his place of employment. Up to that point Wainwright stated he did not know what the boxes contained. He then testified that he was able to observe a large box and smaller boxes and was also able to observe a drill and an acetylene torch. He testified he did not know who the defendants were and from all that appears of record he was not aware of any criminal record or criminal connection of the defendants. He testified that his only purpose in stopping the defendants was because of the fact that the car was parked on the road without lights. He further testified that had the occupants in the car been a man and a woman he would have merely told them to proceed on and not park in the area.
After observing the torch, drill and the boxes he ordered the defendant to turn around and drive back in the direction from which they came. After traveling in that direction for approximately 100 yards they came upon a wheelbarrow and boxes with tools lying on the ground along the edge of the road. They drove back up to the road to the Commonwealth Edison site where the construction was taking place and in front of several guards advised the defendants of their "constitutional rights". He testified that he did this because he wanted to investigate a possible burglary or theft.
Defendant Roberts' testimony insofar as it is pertinent to these proceedings, is that the lights of his automobile were at all times on and that he was not parked at the time when Wainwright's automobile *930 approached him. He testified that because of the curves and bends in the road and other obstructions Wainwright could not possibly have seen his lights as the two automobiles came toward each other.
Defendant in his motion contends that there were no reasonable grounds for the arresting officer to believe that the defendants had committed or were about to commit a crime at the time the vehicle was stopped and that his search of the vehicle, not being an incident to a lawful arrest and committed without the consent of the defendants, was illegal and that any evidence obtained as a result of that search should be suppressed.
 1 It must first be noted that the legality of a search is not to be determined by its results. (People v. Parren, 24 Ill.2d 572, 182 N.E.2d 662.) The Supreme Court there also stated:
"The case thus presents in sharp focus one aspect of the recurrent conflict between the interest of the public in the suppression of crime on the one hand, and on the other the constitutionally guaranteed searches and seizures."
The court further points out that under neither the federal nor the state constitution may a conviction stand that is based upon evidence that is the product of an unreasonable search and seizure.
 2, 3 The "search" in this case was not strictly speaking a search because the torch, drill and boxes were in plain view to Wainwright. Search implies an invasion and quest with some sort of force, either actual or constructive. (People v. McCracken, 30 Ill.2d 425, 197 N.E.2d 35; People v. Wood, 26 Ill.2d 557, 188 N.E.2d 1.) The contraband in the case at bar was in plain view of the deputy, who was able to observe it in the light of the spot light on the police car.
 4 Defendants contend, however, that the stopping of the automobile under the circumstances in this case was without cause and that the subsequent discovery of the contraband is therefore illegal.
In People v. Tassone, 41 Ill.2d 7, 241 N.E.2d 419, the Supreme Court stated:
"Whether a search and seizure is reasonable depends upon whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified initial interference with the defendant's personal security. In making this determination an objective standard is to be applied: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution to believe that the action taken was appropriate?" Citing Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889."
The Supreme Court went on further to say:

*931 "In light of the guidelines set forth in the Terry case, the facts of this case indicate that the stopping of the truck was entirely proper and reasonable. The officer, as a representative of the law enforcement arm of government, was interested in effectively discovering and preventing crime, and this interest justified the officer in approaching the defendant to investigate the suspicious circumstances and possibly criminal behavior." (Emphasis supplied).
In People v. Catavdella, 31 Ill.2d 382, 202 N.E.2d 1, defendant's car was stopped by police officers and they observed in the back seat of the car items that they subsequently learned had been stolen. The Supreme Court said:
"The only evidence of the defendant's guilt is the evidence which was discovered in the back seat of the car at the time of the arrest. The State argues that, since the articles were visible in the back seat of the car there was no search. However, these articles were seen only after the arrest and the seizure cannot be divorced from the question of the validity of the arrest. Whether these items were properly admitted in evidence depends therefore upon the validity of the arrest."
Justice Schaefer in his dissenting opinion disagreed only to the extent of believing that the case should have been remanded for a new trial for the purpose of establishing the "validity of arrest." In Catavdella a majority of the Supreme Court obviously found there was no basis to stop the defendant's motor vehicle, while in the case at bar it might be argued that there was some basis to stop defendants' car.
In People v. Tassone, supra, the police officers had observed a truck parked behind a motel and upon investigation found that the keys were in the ignition. They watched the truck for a period of three hours when they observed the defendant and two others drive up in an automobile. Defendant got into the truck and drove it away. They stated that the defendant obviously had not come from the motel. They had during their surveillance notified the police station to check out the possibility of a theft, however, at the time they stopped the truck they had not received a report from the dispatcher. On these facts the Supreme Court held:
"While there would be nothing suspicious in defendant's merely entering and driving a truck, suspicion was reasonably aroused when a truck, which has been parked behind a motel on a Sunday for at least three hours, and which had the keys in the ignition, was entered by someone arriving at the scene by automobile and not from the motel behind which the truck was parked. This conduct warranted further investigation, and the officer would have been less than diligent if he had failed to approach the defendant for an explanation."
The court went on further to comment:

*932 "Nor did the arrest, or "seizure," of defendant become unreasonable because of what happened subsequently. The "search", if that is what it can be called, was extremely limited in scope * * *."
"The subsequent "arrest," or taking of defendant into custody which can be classified as a more intensive "seizure" than the original stopping for investigation, was therefore perfectly justifiable and reasonable within the meaning of the fourth amendment."
In the case at bar Wainwright admittedly did not stop defendants to investigate possible criminal behavior. It may well be that the circumstances confronting him appeared suspicious, i.e., the car parked along the road. However, this suspicion must have been one of something less than criminal activity, for he testified that had he observed only a man or a woman driving the car he would have told them to move on. While the standard to be used in an objective analysis of the situation confronting the officer, we cannot ignore the fact that he himself acknowledged that the stopping of the defendant was on alleged misconduct. The testimony does not suggest in the slightest that he was able to see three men in the car until after it was stopped. If his purpose was to request the driver of the car to move on there was no need to do this, for the car was already moving on. To say that the facts confronting Wainwright "at the moment of seizure or the search" would "warrant a man of reasonable caution to believe the action taken was appropriate" would in our minds lay aside the decision in People v. Catavdella, supra, and render superfluous all discussions relating to the reasonableness of a "seizure" and a subsequent search or finding of incriminating evidence. In their argument the People contend that Wainwright stopped the defendant on a deserted road. The record is to the contrary. While the road may have been slightly used it was acknowledged that it was in fact used and patrolled by the sheriff's department in search of youngsters illegally drinking. The record also establishes that other motor vehicles have from time to time been observed parking in the area.
It is the opinion of this court that the lower court erred in its refusal to suppress the evidence. Inasmuch as the cause will be reversed without remanding, there is no need to consider the other question raised by the defendants in their motion.
Judgment reversed.
STOUDER, J., concurs.
Mr. PRESIDING JUSTICE ALLOY, dissenting:
I must respectfully dissent from the majority decision in this cause. *933 The only real issue in this cause is whether the deputy acted reasonably when he stopped the automobile occupied by defendants.
The deputy had been advised by a guard at the construction site late at night that a couple of automobiles had been seen going along the lightly traveled dirt road near the boundary of the construction property. While the deputy was patrolling the dirt road he came upon a vehicle on the road apparently with its lights off. The deputy stated that the lights came on immediately and the vehicle came toward the deputy's squad car. When the deputy stopped the automobile the driver of that automobile stepped out of the automobile removed a pair of gloves and threw them in the back seat of the car. The deputy at such time could see in plain view, in the back of the station wagon, several boxes that had equipment markings on them and equipment consisting of tools. When the deputy asked what the driver was doing with all the equipment in the boxes, defendant Roberts responded that he had worked at Commonwealth Edison and used the equipment on his job. The deputy then directed the three men in the car to drive back to the guard shack on the construction site. At the place where defendants' vehicle had been parked, the deputy saw a wheelbarrow with tools inside the wheelbarrow and tools laying on the ground.
The deputy had been patrolling the road. Such patrolling obviously included reasonably checking vehicles moving suspiciously or in suspicious circumstances as against the possibility of a theft or burglary. The deputy was not solely concerned with traffic control. The situation which confronted the deputy was unusual and his conduct at the time was obviously reasonable. Any other course of action, it appears, would have involved a failure on the part of the deputy to discharge his duty as a patrolling officer.
To say that defendants were stopped without justification and the subsequent search was, therefore, illegal, I believe, distorts the decision in People v. Catavdella, 31 Ill.2d 382, 202 N.E.2d 1, and also the well-considered decision in People v. Tassone, 41 Ill.2d 7, 241 N.E.2d 419. As the court pointed out in the Tassone case, whether a search and seizure is reasonable depends upon whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified initial interference with defendant's personal security. In making this determination the court said that an objective standard which is to be applied is whether the facts available to the officer at the moment of seizure would cause a man of reasonable caution to believe that the action taken was appropriate. As indicated in Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, an *934 officer, as a representative of the law enforcement arm of the government, is justified in investigating suspicious circumstances and possible criminal behavior where reasonably indicated. That certainly was the situation in the case before us. The three men were on a relatively deserted road late at night with their lights off, as the deputy testified. The lights were turned on at the approach of the deputy's automobile. It is no answer to the problem to state that if the deputy had discovered that it was a man or a woman driving the car, without any other suspicious circumstances, he would have permitted them to move on. It is hardly a logical analysis to say that the deputy acted unreasonably under the circumstances in this case. I believe that the observations in the Tassone case apply in the instant case. The seizure of the articles involved were incidental to, even though following, the arrest. Such procedure has been approved. People v. Pickett, 39 Ill.2d 88, 233 N.E.2d 560.
I, therefore, believe that the deputy acted reasonable and that the refusal to suppress the evidence was proper. The action of the trial court in this cause should be affirmed.