THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* TONY R. SCHMIDT *et al.*, Defendants-Appellees.

(No. 71-196;

Second District—June 7, 1972.

788

.

William V. Hopf, State's Attorney, of Wheaton, (Ralph J. Gust, Jr., Assistant State's Attorney, of counsel,) for the People.

Julius Lucius Echeles, of Chicago, for appellees.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The defendants, Tony R. Schmidt and Joseph A. Dubiel, were indicted for the offenses of theft, possession of a stolen motor vehicle and possession of burglary tools. They moved to suppress certain property (claimed to be burglary tools) seized from the vehicle occupied at the time of their arrest. The motion was granted and the State appeals.

At 6:45 P.M., November 10, 1970, a driver and collector for a vending machine company came into the Naperville police station and told a Lieutenant Harper that, while on his vending machine collection route, he felt that he was being followed by a van-type truck; that he confirmed he was being followed by going straight through Naperville (his last stop) and continuing to Aurora, observing that the van remained behind him; that, upon returning to Naperville, he proceeded directly to the police station; that the vehicle which followed him was presently in the west parking lot of a food store, directly across from the police station; that in the past few months his employer's trucks had been burglarized and the drivers robbed while they were enroute.

A Sergeant Rowe was ordered to proceed to the parking lot and speak with the individuals occupying the truck. He observed the vehicle pulling into a parking stall in the east parking lot of the food store. The defendants (the two occupants) left the vehicle. They were next seen leaving a dime store and re-entering the vehicle. The sergant approached and asked them for identification which neither defendant could produce. The one sitting in the driver's seat reached above the visor and displayed a license plate registration card bearing a name other than that of the oc-

cupants. In response to an inquiry, defendant stated that they had followed the vending truck because they were trying to find their way to Joliet and were just looking for instructions. At the direction of Lieutenant Harper, Sergeant Rowe asked the defendants to accompany him to the police station so it could be verified that "they had a valid driver's license." An officer was left behind to guard the truck.

Sometime afterwards, at the station, it was discovered that the Chicago vehicle sticker and the license plate were registered in two different fictitious names and addresses and that defendant Schmidt had given a fictitious address. Upon learning that "neither subject could positively identify themselves (sic) and also (since there was) a question of ownership of the vehicle," Lieutenant Harper walked across the street to the parking lot. He stated that he opened the door of the truck and checked the vehicle identification plate on the door, that he observed marks on the rivets that held the plate to the door and that they were protruding further than normal; that he observed that the key, which was in the ignition, was roughly cut and was not of the design put out by the truck manufacturer; that he observed a pry bar on the passenger's side of the truck and a box covered by a blanket behind the passenger's seat; that he lifted the blanket and observed an assortment of tools; that his sole purpose in examining the truck was to obtain further documentation of ownership of the vehicle and identification of the two subjects.

The truck was then impounded and brought to the fire station adjoining police headquarters. In order to check the hidden vehicle identification number against the number found on the van door, a detective moved the box covered by the blanket, discovering at that time that the tools were capable of pulling and picking locks, cutting keys, tearing out tumblers and drilling open round locks. He also found blank keys, a lock cutting machine and some screw drivers.

It was later determined that the vehicle had been stolen about seven years earlier.

The trial judge suppressed the burglary tool evidence, finding that the arrest was legal but that the search and seizure was illegal in that excessive time had elapsed between the arrest and the search in order for the search to be incident to the arrest. (*Chimel v. California* (1969), 395 U.S. 752.) On appeal the State does not attempt to justify the warrantless search as being incident to the arrest but relies instead upon the special rule governing the search of automobiles, developed through *Carroll v. United States* (1925), 267 U.S. 132 and *Chambers v. Maroney* (1970), 399 U.S. 42. See also *Coolidge v. New Hampshire* (1971), 403 U.S. 443.

■■ We first direct our attention to the time and validity of the arrest. After being informed that neither defendant could produce any identifica-

tion in the parking lot, Lieutenant Harper ordered Sergeant Rowe to bring the defendants into the station. Rowe testified that he asked the defendants if they would accompany him to the station so it could be verified that "they had a valid driver's license before letting them go." An arrest occurred at this point since Rowe conveyed to the defendants an intent to restrain them and they then submitted to custody. (Section 107 —5(a) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, sec. 107—5(a); and *People v. Pruitt* (1967), 79 Ill.App.2d 209, 216-217; *People v. Mirbelle* (1934), 276 Ill.App. 533, 541-542.) Both Harper and Rowe admitted that they would not have allowed the defendants to leave the parking lot, and the State in oral argument conceded that an arrest occurred at this juncture. Since the arrest occurred without a warrant, it can only be valid if the police had reasonable grounds to believe that the defendants were committing or had committed an offense. (Sec. 107—2(c) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, sec. 107—2(c)).) During cross-examination, all State's witnesses admitted that, at the time of arrest, the defendants had not violated any law.

■■ The arrests here cannot be based on failure to produce a driver's license. Ill. Rev. Stat. 1969, ch. 95½, Sec. 6A-112, provides that the driver of a motor vehicle must display his driver's license to a peace officer upon demand. Such provision has been interpreted to apply only when a person is actually operating a motor vehicle. (*People v. Francis* (1972), 4 Ill.App.3d 65, 280 N.E.2d 49.) A like application to the instant case would result in the untenable conclusion that two individuals were charged while driving the same vehicle at the same time. We are afforded no direct evidence to indicate that *either* Dubiel or Smith actually drove the van on the highway or in the parking lot. Circumstantial evidence fails to resolve even the question of who was sitting in the driver's position for, when Rowe was questioned on this point, he testified first that Dubiel was on the driver's side, then later stated that Schmidt was in the driver's seat. See *People v. Ammons* (1968), 103 Ill.App.2d 441, 445.

In further effort to justify the arrest herein, the State refers us to *People v. Tassone* (1968), 47 Ill.2d 7. In that case, two police officers observed, on an early Sunday evening, a semi-trailer truck parked behind a motel with the keys in the ignition. After watching the truck for three hours, an auto containing three occupants arrived on the scene. (The auto apparently did not come from the motel.) One occupant emerged from the car, entered the truck and drove it away. The truck was curbed on the highway by the police; the driver produced his driver's license but refused to answer any questions pertaining to the possession of the truck. The Court upheld the validity of the arrest of the defendant driver and affirmed his conviction for theft of the truck. It ruled that probable cause

that a theft was in process was established by the previous circumstances viewed together with the fact that, after the truck was stopped, inquiry of the defendant made it apparent that he "was not authorized to operate the vehicle which he was driving." It is to be noted that *all facts establishing probable cause related to the offense for which the defendant was charged.*

■■ We now consider whether there was probable cause to search the van. The State argues that even if the initial arrest was invalid, the search does not, *ipso facto,* become unconstitutional since this search is not alleged to be one incident to arrest; rather the search is asserted to be the type authorized in *Carroll* and *Chambers, supra.* These cases develop the rule that "where there is probable cause for the belief that the contents of a car offend against the law, a warrantless search may be reasonable," (*People v. Joyner* (1972), 50 Ill.2d 302, 311), and this type of search can be conducted either on the open road or at the police station. The Court, in *Chambers,* makes clear that the validity of an arrest is not necessarily determinative of the right to search a car (399 U.S. at 47, n. 6), since the right to search is "dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." *Carroll v. United States,* 267 U.S., at 158-159.

■■ At the time of the arrest in the case at bar, the police knew that defendant had been following the vending truck, that other vending trucks had recently been robbed, that defendant carried no personal identification, that they gave a tenuous reason for following the truck and that the license plate registration was in the name of a person other than the defendants. Except for the registration factor, the factual situation does not create probable cause either that the vehicle in which the defendants were riding was stolen or that it contained goods or fruits of a crime. Although defendants' conduct, considered with the fact that other vending trucks had been robbed, might certainly raise a suspicion that the defendants were contemplating illegal activity (robbery of the vending truck), probable cause cannot be based upon mere suspicion. *Henry v. United States* (1959), 4 L.Ed.2d 134.

■■ The State's reliance on *Terry v. Ohio* (1968), 20 L.Ed.2d 889, is misplaced under the facts herein. There, an officer noticed the suspicious conduct of the defendant and others on the street; he stopped defendant for questioning and, at the same time, "patted" him down; in doing so he felt a gun and then, for the first time, searched within the clothing of the defendant for the weapon. The Court affirmed the trial court's denial to suppress the weapon and, after relating various reasons for doing so, stated at page 911:

"* * * The sole justification of the search in the present situation

is the protection of the police officer and others nearby, and *it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.*" (Emphasis supplied.)

We interpret *Terry* to allow a police officer to stop for investigation or interrogation an individual who acts under suspicious circumstances and to permit the officer doing so to take precautions to protect himself from being assaulted. The search is limited in degree and purpose. The facts in the instant case do not come within this purview.

■■ The only fact known to the officer at the time of arrest which related to the charge brought herein was that the registration card did not carry the name of either of the defendants. Was this fact, by itself, sufficient to create probable cause to believe that the vehicle was stolen? We conclude that it was not. To hold otherwise would create a precedential presumption that every time the registration card of a vehicle differs from the identification of the occupant, it may be presumed the vehicle is stolen and a warrantless seach is authorized.

While the validity of an arrest does not necessarily determine the validity of a *Carroll-Chambers* search, in this case it was only due to the defendants' arrest and detention that the police were allowed additional time to gain facts sufficient to create the necessary probable cause for the searches.

To allow such procedure would be to sanction or promote invalid arrests and detentions in order to gather facts sufficient to establish probable cause for a warrantless seach of a person or his vehicle. We conclude that the searches conducted herein were invalid.

■■ While the trial court's order appealed was founded on other reasons, the correctness of the result reached is the question before the reviewing court. (*People v. York* (1963), 29 Ill.2d 68, 71.) We find the results reached in the order appealed to be correct and the judgment, therefore, will be affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.