The People of the State of Illinois, Plaintiff-Appellee, v. Winfred B. Johnson, Defendant-Appellant.

(No. 57589; ▮▮▮▮▮▮▮▮

First District (4th Division)—August 8, 1973.

James J. Doherty, Public Defender, of Chicago, (Ian Levin, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane and Patricia Bobb, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Winfred B. Johnson (hereinafter referred to as defendant) was arrested on May 20, 1971, for a traffic violation and charged with a U-turn violation and failure to carry a driver's license. He was searched and an unregistered gun and ammunition was found in his back pocket. The defendant was charged in Complaint No. 71 MC1 643484 with the offense of unlawful use of weapons (Ill. Rev. Stat. 1969, ch. 38, sec. 24—1(a) 4), and in Complaint No. MC1 643487 with the offense of unlawful possession of firearms or ammunition. Ill. Rev. Stat. 1969, ch. 38, sec. 83—2.

The defendant filed a pre-trial motion to suppress which was overruled. Following a bench trial, he was found guilty of both charges and sentenced to six months in the county jail for unlawful use of weapons and fined $200 for unlawful possession of firearms or ammunition. There was a *nolle* and non-suit on the traffic violations.

The issues presented for review in this appeal are:

1. Whether the motion to suppress the evidence was improperly denied, due to the lack of probable cause for the arrest that led to the search which produced the evidence.
2. Whether the defendant waived his right to review by failing to make an oral or written request for a new trial.

The gun and ammunition were introduced into evidence after the court denied a pre-trial motion to suppress. The defendant's appeal is based on his belief that the court erred in denying his motion to suppress and finding him guilty after trial.

■■ The motion to suppress the evidence was improperly denied. The evidence was the product of an unlawful search, made without a warrant and without probable cause. "The denial of the defendant's motion and

petition to suppress the evidence and return the property unlawfully seized was reversible error." *People v. Scaramuzzo* (1933), 352 Ill. 248, 253, 185 N.E. 578, 580.

Patrolman Donald Nichols testified that on May 20, 1971, he was heading north on Calumet Avenue near 61st Street in the city of Chicago when he observed a car proceeding easterly on 60th Street make a U-turn and then proceed westerly. He believed there were three people in the car when he saw it making the U-turn at a distance of three-quarters of a block away. He could neither see who was driving the car at the time, nor could he tell if the driver was a man or a woman. The officer lost sight of the car. He later observed the car parked in front of 333 East 60th Street. No one was in the car at the time he arrived. The defendant was standing outside near the driver's side. A friend was standing near the curb.

In response to questioning by the officer, the defendant and his friend both informed the officer that the car was not his, he was not driving the car and he did not have a driver's license because he neither owns nor drives a car. He further informed the officer that the car belonged to his sister, who was driving it, and that she had gone inside the building. The officer stated that with respect to defendant: "I placed him under arrest to search his person." The officer then searched the car and the defendant personally. He also searched the defendant's friend. The officer had no arrest or search warrant. The officer discovered a gun in the right back pocket of the defendant who could not produce a State firearms owners' identification card.

There was nothing suspicious about defendant's manner or appearance to put the officer on alert. When the defendant was observed and questioned, he was standing peacefully outside the car. The officer did not observe the gun or any part of it before he conducted the search of the defendant and his friend. He had not received any prior information from any citizen or reliable informer.

Immediately after Officer Nichols arrested defendant and searched the car, the defendant and his friend, a lady, who identified herself as the defendant's sister, came out of the building and told the officer that she was the owner of the car in question and that she had been driving it.

The defendant testified that he neither owned the car in question nor did he drive it at any time. He did not have a driver's license because he does not drive. His sister was the owner of the car and was driving it while he and his friend were passengers on the day in question. When the defendant's sister pulled up in front of this particular address, she got out of the car and went into the house. The defendant and his friend were standing near it while waiting for her to come back out. This is

when Officer Nichols approached and the arrest, search and seizure took place.

A search made incident to an arrest is deemed reasonable only where probable cause exists for the arrest. (*People v. Schmidt* (1972), 5 Ill.App.3d 787, 284 N.E.2d 72.) This was an appeal by the State from the granting of a motion to suppress certain property (claimed to be burglary tools) seized from the vehicle occupied by the defendants at the time of their arrest.

In the *Schmidt* case, the court stated at page 790:

"The arrests here cannot be based on failure to produce a driver's license. Ill. Rev. Stat. 1969, ch. 95½, Sec. 6A—112, provides that the driver of a motor vehicle must display his driver's license to a peace officer upon demand. Such provision has been interpreted to apply only when a person is actually operating a motor vehicle. (*People v. Francis* (1972), 4 Ill.App.3d 65, 280 N.E.2d 49.) A like application to the instant case would result in the untenable conclusion that two individuals were charged while driving the same vehicle at the same time. We are afforded no direct evidence to indicate that *either* Dubiel or Smith actually drove the van on the highway or in the parking lot. Circumstantial evidence fails to resolve even the question of who was sitting in the driver's position for, when Rowe was questioned on this point, he testified first that Dubiel was on the driver's side, then later stated that Schmidt was in the driver's seat. See *People v. Ammons* (1968), 103 Ill.App.2d 441, 445."

In the case of *People v. Ammons* (1968), 103 Ill.App.2d 441, 445, 243 N.E.2d 709, 711, the judgments, finding defendant guilty of driving under the influence, for which he received a sentence of 60 days, and a fine of $25 for driving without a valid driver's license, were reversed. The facts were very similar to the instant case. The State's case was presented through the testimony of one witness, the arresting officer, Joseph Dier, who while on patrol saw a car, "a block and a half away" veer to the extreme left while passing a parking car. He engaged his blue light and gave chase. He saw two males in the car but could not tell who was driving. He lost sight of the car when it turned into an alley. When he arrived at the car, defendant was lying on the passenger's side with his head toward the driver's side. Defendant got out of the car. He appeared to have been drinking, and he had no driver's license. Defendant and Wright both testified that Wright had been driving and that they stopped in the alley behind the home of Wright's mother and Wright had gone inside leaving defendant sitting in the car.

The court stated on page 445:

"The sine qua non for a conviction on either charge is proof beyond a reasonable doubt that defendant had been driving the car at the time in question. The evidence failed utterly to establish this fact, so both convictions must be reversed without consideration of the intoxication evidence."

In the instant case, Officer Nichols testified that he never saw who was actually driving the car, whether a man or a woman. He did not see the driver when the U-turn was made, nor did he keep the vehicle in sight at all times. He stated that he turned around, lost sight of the vehicle with three people in it, and later saw it parked in front of a residence, with one person standing near the driver's side, another on the curb, and a lady, the alleged owner and driver, temporarily inside the building from which she soon returned and confirmed the information given by defendant and his friend, that she was the owner and driver of the car.

■■ The legality of a search is not to be determined by its results. (*People v. Parren* (1962), 24 Ill.2d 572, 182 N.E.2d 662; *People v. Roberts* (1971), 2 Ill.App.3d 927, 930, 274 N.E.2d 688.) An arrest cannot be justified by what is found during a subsequent search. (*People v. Beattie* (1964), 31 Ill.2d 257, 260, 201 N.E.2d 396; *People v. Pruitt* (1967), 79 Ill.App.2d 209, 223 N.E.2d 537.) There was no probable cause to arrest the defendant, nor to search the car, the defendant and his friend. This search, which was incident to the unlawful arrest, violated the defendant's constitutional right to protection from unreasonable searches and seizure.

Ill. Rev. Stat. 1969, ch. 38, sec. 107—2 provides in part:

"A peace officer may arrest a person when:

\* \* \*

(c) He has reasonable grounds to believe that the person is committing or has committed an offense."

An arrest is not justified by what the subsequent search discloses. The fact that afterward contraband was discovered was not enough. Probable cause cannot be based on mere suspicion. *Henry v. United States* (1959), 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed. 134.

In the case of *People v. Ford* (1934), 356 Ill. 572, 576, 191 N.E. 315, 317, the defendant was indicted and found guilty of carrying a concealed weapon. He prosecuted a Writ of Error claiming a violation of his constitutional rights. The motion to suppress had been denied. The judgment was reversed. The court stated at pages 576-77:

"It is manifest from the evidence that the plaintiff in error was committing the offense of carrying a concealed weapon at the time officer Cantello arrested him. The officer, however, had neither knowledge nor information that the plaintiff in error had

committed any criminal offense. The evidence discloses that he was arrested solely because he was reputed to be a member of a certain body of men suspected of being implicated in the kidnaping of Factor. It is not charged that Cantello entertained the belief that the plaintiff in error was implicated in that offense. Although the officer stated that the Touhy gang was reputed to have engaged in robberies and kidnapings, he testified that he did not suspect the plaintiff in error of participation in any of those offenses. No overt act of a criminal tendency had been committed and nothing the plaintiff in error did caused the officer to suspect him of the specific offense of carrying a concealed weapon. The discovery of the weapon after the arrest cannot relate back to, and operate as a justification for, the arrest (*People v. Macklin*, 353 Ill. 64). When the liberty of the plaintiff in error was invaded by his arrest, officer Cantello had no reasonable ground to suspect that he had committed or was committing any criminal offense, and the arrest without a warrant or sufficient legal authority was therefore unlawful. It necessarily follows that the subsequent search of the person of the plaintiff in error was illegal and that the knowledge and the evidence of the misdemeanor were obtained and used against him in violation of section 6 of article 2 of the constitution. The provision of the bill of rights that a citizen shall be secure in his person, house, papers and effects against unreasonable searches and seizures is intended for the protection of the individual against oppressive action by the government and every officer who administers a part of the functions of government. (*People v. Macklin, supra; People v. McGurn, supra* [341 Ill. 632]; *People v. Castree*, 311 Ill. 392; *People v. Brocamp*, 307 id. 448). The evidence which the plaintiff in error by his motion sought to suppress was incompetent and the motion should have been granted. Without this evidence there is no competent proof tending to show that the plaintiff in error was guilty of the offense charged against him."

Mr. Justice Schaefer said in *People v. Watkins* (1960), 19 Ill.2d 11 at pages 18-19, 166 N.E.2d 433, 436-37:

"The constitution prohibits only unreasonable searches; it permits those that are reasonable. The critical issue in each case must be whether the situation that confronted the officer justified the search. That question can not be determined by an indiscriminate application of legal concepts that were evolved to meet quite different problems. A uniform rule permitting a search in every case of a valid arrest, even for minor traffic violations, would greatly

simplify our task and that of law enforcement officers. But such an approach would preclude consideration of the reasonableness of any particular search, and so would take away the protection that the constitution is designed to provide. Other courts are in accord. They have refused to establish a uniform rule to govern all searches accompanying valid arrests, but rather have examined the nature of the offense and the surrounding circumstances to determine whether the search was warranted. Cf. *People v. Blodgett*, 46 Cal.2d 114, 293 P.2d 57; *Elliott v. State*, 173 Tenn. 203, 116 S.W.2d 1009; *People v. Gonzales*, 356 Mich. 247, 97 N.W.2d 16; See: Einhorn, The Exclusionary Rule in Operation, 50 J. Crim. L., C. & P.S. 144, 160 (1959); 1959 Wis. L. Rev. 347.

A search incident to an arrest is authorized when it is reasonably necessary to protect the arresting officer from attack, to prevent the prisoner from escaping, or to discover fruits of a crime. But the violation involved in this case was parking too close to a crosswalk,—the kind of minor traffic offense that ordinarily results in a 'parking ticket' hung on the handle of the door of the car, telling the offender that it is not necessary to appear in court if he mails in the amount of his fine. Such an offense does not, in itself, raise the kind of inferences which justify searches in other cases. Some traffic violations would justify a search. The total absence of license plates, for example, as in *People v. Berry*, 17 Ill.2d 247, could reasonably suggest a serious violation of the law, as could an obscured license plate upon a car being driven in the early morning hours, as in *People v. Esposito*, 18 Ill.2d 104. But when no more is shown than that a car was parked too close to a crosswalk or too far from a curb, the constitution does not permit a policeman to search the driver. To the extent that *People v. Clark*, 9 Ill.2d 400, and *People v. Berry*, 17 Ill.2d 247, conflict with these views, they are overruled."

■■ The search that was made here cannot be justified as being reasonable. The practice of searching passengers of an automobile that is involved in a minor traffic offense, as was done in this case, is reprehensible and is strongly condemned.

The rule precluding the reviewing court from passing on the sufficiency of the evidence in the absence of a motion for a new trial will not be observed where the trial court had ample opportunity to and did pass on the sufficiency of the evidence. Defendant's motion to suppress presented the court with such an opportunity. This court will consider the sufficiency of the evidence to sustain a conviction even though the

defendant did not file a motion for a new trial. *People v. McGraw* (1958), 13 Ill.2d 249, 149 N.E.2d 100.

For the foregoing reasons, the judgments of the circuit court are reversed.

Reversed.

BURMAN, P. J., and DIERINGER, J., concur.