THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* CHARLES WILLIAMS, Defendant-Appellee.

(Nos. 60282-3-4-5 cons.;

First District (5th Division)—April 25, 1975.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Thomas D. Rafter, Assistant State's Attorneys, of counsel), for the People.

Charles I. Schwartz, of Rodgon and Schwartz, of Chicago, for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant was charged in four separate complaints with the offenses of: (a) possession of a controlled substance, *i.e.*, heroin (Ill. Rev. Stat. 1971, ch. 56½, par. 1402); (b) unlawful use of a weapon in that he knowingly carried a concealed weapon, a revolver, in a vehicle (Ill. Rev. Stat. 1971, ch. 38, par. 24—1); (c) failure to carry a firearm owner's identification card (Ill. Rev. Stat. 1971, ch. 38, par. 83—2(a)); and (d) theft of lost or mislaid property in that defendant obtained control over a revolver owned by Harry Commings with intent to deprive said owner permanently of the use of said property (Ill. Rev. Stat. 1971, ch. 38, par. 16—2). The cases were consolidated in the trial court. Defendant made a motion to suppress evidence, (the gun and heroin) which was granted by the trial court. The State appeals pursuant to Supreme Court Rule 604(a)(1). (Ill. Rev. Stat. 1971, ch. 110A, par. 604(a)(1).) The sole issue on appeal is whether the trial court properly sustained the motion to suppress evidence.

The following evidence was adduced at the motion to suppress evidence. Chicago Police Officer Drakulich, called by defendant, was the sole witness to testify. On direct examination he testified that on October 1, 1973, he saw defendant in an all-night shopping mart, the Food Basket, at 79th and Yates Avenue. Officer Drakulich was in uniform on patrol duty and accompanied by a fellow officer. At that time he said hello to the codefendant, Britton,[1] whom he had known for approximately 8 months. He then left the food store and was waiting in his car across the street in a parking lot.

Sometime later he saw defendant and Britton leave the food store and enter their vehicle. Defendant was in the passenger seat and Britton was in the driver's seat. They proceeded to drive westbound on 79th Street. He and his partner followed them, close enough to observe their license plate number. He finally stopped their vehicle at 79th and Greenwood, for driving too fast for conditions, in that the car was going 38 m.p.h. in a 30 m.p.h. speed zone. This was at 6 A.M. while it was raining severely and dark out. He gave Britton a ticket for driving too fast for conditions.

---

[1] Britton did not join in the motion to suppress evidence and is not a party to this appeal.

Both he and his partner got out of the car. Defendant and Britton got out of their car. He then conducted a search of defendant, who at that time was not in violation of any laws. He had ordered defendant out of the car. He also searched the motor vehicle and found contraband both in the car and on defendant's person. When he searched the car, defendant was standing to the rear passenger side of the car with his partner.

During cross-examination by the assistant State's attorney it was brought out that prior to curbing the vehicle he ran a registration check on the license plate. The results of this investigation showed that the vehicle was owned by a corporation, State Lincoln Mercury, Incorporated, 2701 South State Street, Chicago. Officer Drakulich was then questioned as to the specific time sequence of the events following his curbing of the vehicle. He explained that after he curbed the vehicle, he approached Britton who was still seated in the driver's seat. He notified Britton of his violation and asked him for his driver's license and to whom the car belonged. Britton responded that the car belonged to his girl friend and said, "I don't have a driver's license." He told Britton to get out of the vehicle, that he could not drive, and that he was under arrest for driving without a driver's license. He then searched Britton and found a cylindrical flask, 3 inches long, containing a white crystal which he suspected was cocaine.

After this he asked defendant to get out of the car, told him that he could drive the car if he had a driver's license, "but only after—to come in to the station with the vehicle, and only after I searched him for my own protection." He then searched defendant and the car.

Drakulich testified he searched the vehicle first and located directly under the seat where defendant was sitting, a small caliber revolver. He recovered the revolver before searching defendant's person. Upon searching defendant he found contraband (heroin). At that time he placed defendant under arrest.

On redirect examination it was brought out that he told defendant to get out of the car when he came up. At that time he was not in violation of any law. He then proceeded to search the car. He reiterated that he searched Britton before searching defendant.

On recross-examination Drakulich testified that at the time he searched Britton, he was under arrest.

The following colloquy then took place with the court:

"THE COURT: According to the officer's testimony, Mr. Britton was charged, he was arrested and he was searched. That's when the substance was found.

Now, as to Mr. Charles Williams, he was merely a passenger

in the car. The officer did not know whether this vehicle was stoen [*sic*] or not. However, he did testify that he wanted Charles Williams to drive the car to the station.

Is that what you testified to?

OFFICER DRAKULICH: That he had the option to do so.

THE COURT: That he had the option to do so. And when you searched him, he was not under arrest.

OFFICER DRAKULICH: No.

THE COURT: Motion to suppress sustained."

OPINION

Defendant argues that the trial court was correct in sustaining his motion to suppress evidence. He refers to Officer Drakulich's testimony and argues that Drakulich gave several different versions of the events leading to his arrest; that it was the duty of the trial court to determine controverted questions of fact and concludes that because there existed an alleged version of the facts which would support the lower court's decision, we must affirm. The alleged inconsistencies in the testimony of the events in question, which defendant points to, may be summarized as follows: (1) whether, upon curbing the vehicle defendant was riding in, Drakulich immediately searched defendant before doing anything else; (2) whether Drakulich searched the automobile or defendant first; (3) whether defendant was in the car or standing outside of the car when the searches were made; and (4) whether defendant was under arrest when he was searched.

During defense counsel's initial direct examination of Drakulich he asked if the officer searched defendant and was given an affirmative reply. He then asked, "You then conducted a search of the motor vehicle, is that correct, Officer?" to which Drakulich answered, "Yes." From this question and answer defendant argues that the search of defendant, before searching the car or knowing anything else, was unlawful. In reviewing this testimony it must be kept in mind that this was the direct examination conducted by defense counsel of his own witness. Defense counsel did not mention nor is it evident from his previous questions that he was trying to elicit a time sequence for the events. Furthermore, counsel never asked about Britton and the events surrounding his arrest. Later, on cross-examination by the assistant State's attorney, it was made clear that Britton was searched and arrested prior to the searches of defendant and the car. We therefore find no inconsistency in Drakulich's testimony on this point. As will be made apparent later in this opinion, once it becomes clear that Britton was arrested and searched first, the last three alleged inconsistencies in the events mentioned above become

irrelevant, and the lower court erred in granting defendant's motion to suppress evidence.

■■ It is undisputed that Drakulich properly stopped the vehicle for driving too fast for conditions. Further, upon learning that Britton did not have a driver's license (a violation of Ill. Rev. Stat. 1971, ch. 95½, par. 6—101(a)), he was lawfully placed under custodial arrest. This fact, in itself, is sufficient to distinguish *People v. Palmer,* 22 Ill.App.3d 866, 318 N.E.2d 206. Thereupon Drakulich searched Britton and discovered a vial of what he suspected was cocaine. This search was clearly proper under *Gustafson v. Florida,* 414 U.S. 260, 38 L.Ed.2d 456, 94 S.Ct. 488, and *United States v. Robinson,* 414 U.S. 218, 38 L.Ed.2d 427, 94 S.Ct. 467 (Accord, *People v. Cannon,* 18 Ill.App.3d 781, 310 N.E.2d 673; *People v. Symmonds,* 18 Ill.App.3d 587, 310 N.E.2d 208.) In *Robinson* the Court stated at page 235:

> "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."

Similarly, in *Gustafson* the Court held that, "upon arresting petitioner for the offense of driving his automobile without a valid operator's license, and taking him into custody, Smith was entitled to make a full search of petitioner's person incident to that lawful arrest."

■■■ This therefore brings us to what we view is the fundamental issue in this case: Whether the two additional searches of the auto and of defendant's person can be justified as an incident to Britton's arrest? If the answer to this question is in the affirmative, then the alleged inconsistencies in Drakulich's testimony are rendered irrelevant. The scope of a valid search incident to a lawful arrest was stated in *People v. Hendrix,* 25 Ill.App.3d 339, 323 N.E.2d 505, quoting from *Chimel v. California,* 395 U.S. 752, 762, 23 L.Ed.2d 685, 89 S.Ct. 2034:

> "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in

order to grab a weapon or evidentiary items must, of course, be governed by a like rule."

Furthermore, "[a] search incident to a lawful arrest is reasonable even though it is not restricted to evidence directly related to the offense for which the arrest is made." (*Symmonds*, at 593.) Each case must be decided on its own facts, and the ultimate test must be the reasonableness of the search.

As to the search of the car, where Drakulich found the revolver underneath defendant's seat, the case law supports its validity. In *People v. Joyner*, 50 Ill.2d 302, 278 N.E.2d 756, the Illinois Supreme Court upheld searching the entire passenger section of a car, when made incidental to a lawful arrest. Similar searches were also upheld in *Symmonds; Cannon;* and *People v. Thomas*, 31 Ill.2d 212, 201 N.E.2d 413.

A different rationale has been invoked to uphold a search of a passenger incidental to the lawful custodial arrest of the driver of a vehicle. Although the basis for such a search stems from the driver's arrest, the few cases in this area that we have been able to find do not include the passenger as within the scope of *Chimel* so as to allow a full evidentiary search. Rather, the custodial arrest is viewed as giving sufficient ground for a "pat-down" search of the passenger for weapons. (*Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868.) In *United States v. Berryhill* (9th Cir. 1971), 445 F.2d 1189, 1193, defendant, driver of a car, was arrested pursuant to an arrest warrant. His wife, a passenger in the car, had her purse searched from which evidence was obtained and later introduced at defendant's trial. Defendant argued that the search of his wife's purse was too extensive in scope under *Chimel*. The court, in holding the search as reasonable, stated:

"In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967), the Court affirmed the right of a limited search 'to assure * * * that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him' despite the absence of probable cause for an arrest. We think that *Terry* recognizes and common sense dictates that the legality of such a limited intrusion into a citizen's personal privacy extends to a criminal's companions at the time of arrest. It is inconceivable that a peace officer effecting a lawful arrest of an occupant of a vehicle must expose himself to a shot in the back from defendant's associate because he cannot, on the spot, make the nice distinction between whether the other is a companion in crime or a social acquaintance. All companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-

down' reasonably necessary to give assurance that they are unarmed."

(Accord, *People v. Gilyard*, 124 Ill.App.2d 95, 260 N.E.2d 364; *People v. Evans*, 22 Ill.App.3d 733, 317 N.E.2d 734.) Although the passenger was not a defendant in *Berryhill*, as long as the search was reasonable, the evidence would be admissible against a passenger.[2]

■■ It is unquestioned that Drakulich merely searched defendant for his own protection. No argument is made nor does the evidence indicate that this search went beyond the proper bounds of a *Terry* search. After Drakulich questioned Britton as to his ownership of the car, and comparing that with the knowledge he gained from the registration check, he had grounds for suspicion that the vehicle was stolen. Although not sufficient, in itself, to justify a search (*People v. Schmidt*, 5 Ill.App.3d 787, 284 N.E.2d 72), it is a factor that must be considered. Additionally, he had just arrested Britton and found what he suspected was cocaine. He was on a deserted street, at 6 A.M. in a rainstorm, and the arrestees were equal in number to the police present. Under these circumstances the search of defendant that occurred here, even if it came before the search of the vehicle and before defendant's arrest, was proper.

We hold that under the reasoning as above stated, the searches were proper, and the court erred in granting defendant's motion to suppress evidence. The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

BARRETT, P. J., and SULLIVAN, J., concur.

---

[2] *United States v. Di Re*, 332 U.S. 581, 92 L.Ed. 210, 68 S.Ct. 222, distinguished in *Berryhill*, because a different type of search in scope was involved, is distinguished from the instant case on those same grounds. Furthermore, *Di Re* was decided long before the *Terry* decision which allowed a different search on less than probable cause.