(No. 36378.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NATHANIEL PARREN, Plaintiff in Error.

*Opinion filed May 25, 1962.*

DAILY, J., dissenting.

EDWARD A. BERMAN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and MARVIN E. ASPEN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Nathaniel Parren, the defendant, was convicted under an indictment that charged him with illegal possession of narcotics. His motion to suppress the admission in evidence of certain heroin and marijuana found in his personal possesion and in his apartment was overruled, and he was found guilty and sentenced to a term of imprisonment of not less than four nor more than seven years in the penitentiary. On this writ of error he contends that his constitutional rights

were violated by the denial of his motion to suppress, and that his conviction must therefore be reversed.

At the hearing on the motion to suppress, police officer William Alexander testified that on July 20, 1959, "we received information from an anonymous source that a man known as 'Big Jaw' and described to us as about 5 feet 8 or 9, between 30 and 32 years of age, and wide-eyed was selling narcotics" on the fourth floor of an apartment building at 4402 South Greenwood Avenue in Chicago. Officer Alexander and his partner had no search warrant or arrest warrant, but they went at once to that street address, "and talked to the janitor's son, described the person we were looking for to him and he couldn't help us. So we went to the fourth floor and while on the fourth floor we heard a noise at the rear apartment, it sounded like children playing," so Alexander went to that apartment while his partner went to the rear.

Alexander knocked at the door and it was opened by a girl about nine years old. He told her that he was a police officer, and began to describe the person he was looking for. At that point the defendant came from the rear of the apartment and asked Alexander who he was looking for. Alexander said "Big Jaw," and the defendant continued to walk toward the front of the apartment. The officer testified that he noticed that the defendant answered the description given by the anonymous informant, and also saw that he was carrying a piece of tinfoil and two brown envelopes in his hand. Alexander entered the apartment without invitation, placed the defendant under arrest and took the tinfoil and the envelopes, which were later found to contain heroin. Alexander's partner found marijuana behind the refrigerator in the kitchen.

Thus the facts are that the defendant was arrested in his home, and his person and his home were searched by officers who had no warrant, but who acted upon information that they received from an anonymous source, ap-

parently by telephone. The People attempt to sustain the overruling of the motion to suppress upon the ground that the search was incidental to a legal arrest.

The case thus presents in sharp focus one aspect of the recurrent conflict between the interest of the public in the suppression of crime on the one hand, and on the other the constitutionally guaranteed security of the individual against unreasonable searches and seizures. In identical language, section 6 of article II of the constitution of Illinois and the fourth amendment to the constitution of the United States provide that the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated. Under neither constitution may a conviction stand when it is based upon evidence that is the product of an unreasonable search and seizure. *City of Chicago* v. *Lord,* 7 Ill.2d 379; *Weeks* v. *United States,* 232 U.S. 383, 58 L. ed. 652; *Mapp* v. *Ohio,* 367 U.S. 643, 6 L. ed. 2d 1081.

To sustain the legality of the search, the People rely on *People* v. *Tillman,* 1 Ill.2d 525. In that case a Chicago police officer "received a telephone call from an unidentified person, who informed him that there was a man called Trench Coat — a tall, slim, brown-skinned, colored man about twenty-five or thirty years of age with a gold tooth in the front of his mouth—living in Room 212 of the Strand Hotel with a heavy-set woman, and that this man peddled narcotics and had sold narcotics on the previous evening to an addict. About an hour later this police officer and a partner arrived at the hotel, proceeded to the second floor, and observed a heavy-set woman wearing a robe, standing in the hall in front of Room 212. The door to the room was partly open, and the police officer observed defendant lying in a bed inside the room. The latter resembled in appearance the description given by the unidentified informant on the telephone. The officer arrested the woman, brought her into the room, and searched her, finding five

capsules of heroin in the pocket of her robe. He then awakened the defendant, who had been asleep on the bed, and arrested him. In the course of a conversation with the police officer defendant stated that some people called him Trench Coat. The officer raised the mattress from the bed and found a box containing ninety-five capsules of what was later ascertained to be heroin." 1 Ill.2d at 528.

*People* v. *Tillman* was a close case, as is evident from the dissents of Mr. Justice Maxwell and Mr. Justice Klingbiel. As a general proposition, "[A]n uncorroborated tip by an informer whose identity and reliability are both unknown does not constitute probable cause to make an arrest." *Contee* v. *United States,* 215 F.2d 324, 327 (D.C. Cir. 1954) ; see also, *Wrightson* v. *United States,* 222 F.2d 556 (D.C. Cir. 1955) ; *Worthington* v. *United States,* 166 F.2d 557 (6th Cir. 1948) ; *United States* v. *Kind,* 87 F.2d 315 (2d Cir. 1937.) ; *People* v. *Thymiakas,* 140 Cal. App.2d 940, 296 P.2d 4.

It is clear that the legality of a search is not to be determined by its results. (*Johnson* v. *United States,* (1948) 333 U.S. 10, 16-17, 92 L. ed. 436.) Nevertheless, because what the constitution prohibits are unreasonable searches, the standard is the reasonableness of the conduct of the officer in the light of all of the circumstances. The issue presented and the test to be applied were thus stated by Mr. Justice Traynor in *Willson* v. *Superior Court,* 46 Cal. 2d 291, 294 P.2d 36: "Accordingly, the question presented is whether the information given by the unidentified man to the Chief of Police and passed on to Officer Sunday was sufficient in the light of the other evidence to constitute reasonable cause to believe that defendant was guilty of a felony. Although information provided by an anonymous informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency, see *People* v. *Kilvington,* 104 Cal. 86, 92-93, 37 P. 799, an arrest may not be based solely on such information, *United States* v. *Kind,*

2 Cir., 87 F.2d 315, 316; *United States* v. *Blich,* D.C. 45 F.2d 627, 629; *United States* v. *Keown,* D.C., 19 F. Supp. 639, 646; *State* v. *Arregui,* 44 Idaho 43, 254 P. 788, 793-794, 52 A.L.R. 463; *Hill* v. *State,* 151 Miss. 518, 118 So. 539, 539-540; *Smith* v. *State,* 169 Tenn. 633, 90 S.W.2d 523, 524, and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable. See, *People* v. *Boyles, supra,* 45 Cal. 2d 652, 290 P.2d 535. In some cases the identity of, or past experience with, the informer may provide such evidence, see, *Aitken* v. *White,* 93 Cal. App. 2d 134, 145, 208 P.2d 788, and in others it may be supplied by similar information from other sources or by the personal observations of the police."

In the case before us the trial judge overruled the motion to suppress because he felt compelled to do so by our decision in the *Tillman* case. The two cases are indeed close. In neither was the identity of the informer known, and so when the officers went to the locations described by the informer, they had no basis, in either case, for relying upon the information that he furnished. But in the *Tillman* case the arrest and search of the defendant did not take place until after the reliability of the informer had been indicated by the discovery of heroin on the person of the defendant's companion. In the present case, however, the police officers, without a warrant and acting solely upon the word of their unknown informant, entered the defendant's home and conducted their search. The search thus made was without a reasonable basis, and it was error to overrule the motion to suppress. The judgment of the criminal court of Cook County must therefore be reversed.

*Judgment reversed.*

Mr. JUSTICE DAILY, dissenting.