THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEONARD ALEXANDER, Defendant-Appellant.

First District (3rd Division)    No. 77-668

Opinion filed October 18, 1978.

560

Russell J. Hirsch, of Chicago (Scott C. Colky, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Mary Ann Callum, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a trial without a jury in the circuit court of Cook County, the defendant, Leonard Alexander, was found guilty of the offense of armed robbery and sentenced to a term of four years to four years and a day. The issues presented for review are (1) whether the arrest of the defendant lacked probable cause; (2) whether the subsequent identification was "fruit of the poisonous tree" (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407); (3) whether the identification at lineup was unnecessarily suggestive; and (4) whether the in-court identification was sufficient to sustain a conviction.

On March 16, 1972, at 12:30 in the morning, the Whoopy Burger Restaurant at 401 North Central Avenue in the City of Chicago was robbed by two men. James Williams, the manager of the establishment, was working behind the counter when a man with a gun demanded the money in the cash register. Williams turned over the cash. After the robber had left the building Williams ran to the back door, which was

blocked, and then proceeded out the front door and around to the back where the robbers' car was parked. Williams arrived at the back of the store in time to see the robbers in the car as it was being driven away by the defendant.

Williams testified that the parking lot was very well lit at the time of the robbery and that he was able to get a good look at the defendant's face, even though the defendant was wearing a white hat with a wide brim. The defendant remained in the car during the robbery. When Williams ran outside after the robbery he was within four to five feet of the defendant. Williams first noticed the car used in the robbery before the gunman entered the restaurant. At that time it was parked behind the drivein and Williams saw the defendant, sitting in the car alone, from a distance of 35-40 feet.

Williams did not speak to the police the night of the robbery because he was busy waiting on customers. Alonzo Walton, the head manager, was also present during the robbery and spoke to the police that evening. Two weeks later Williams was interviewed by the police and described the driver of the car as black, about six feet tall and wearing a white hat, white trousers and white turtle neck sweater. He also described the car used during the robbery, a 1965 or 1966 blue two-door Cadillac without license plates. He gave no description of the defendant's facial features. Williams told the police he had seen the defendant two or three times before the night of the robbery, the most recent occasion being the night immediately preceding the crime, and that he had spoken to the defendant on some of these occasions. Williams did not, however, know the defendant by name.

On April 23, 1972, approximately five weeks after the robbery, a phone call was made to the police by a person identifying himself only as an employee of Whoopy's. The caller indicated that one of the Whoopy robbers was a black male in his 20's, approximately six feet tall, that he generally wore white clothes and a white hat, and that he drove a 1965 or 1966 two-door blue Cadillac. The license plate number of the car was also provided. The caller stated that the suspect frequented the area of West End Avenue and Pulaski. When Officer Flynn heard about this call he realized that the description of the car given by the caller corresponded to the description previously given to the police. In response to the call Officer Flynn proceeded to the specified area, found the defendant in the described car, dressed in the described clothing, and arrested him.

The defendant was taken to the police station and Williams was brought in to view a lineup. The defendant was the only member of the lineup wearing white clothing and the only one holding a white hat. Officer Flynn testified that he did not tell the defendant to wear his white hat during the lineup; that he told the lineup members they could wear

whatever they wanted; and that he could not remember whether he asked the other members to put on a white hat or if he told the defendant to leave the hat in another room. Williams identified Alexander as the driver of the robbery car and testified that he was able to identify him by his facial features rather than by his clothing.

Alexander presented an alibi defense at trial. The defendant's brother, sister, and the defendant himself each testified that the defendant's 1965 Cadillac had been in an accident and was in a body shop being repaired at the time of the robbery. These witnesses testified the three of them had been together at the sister's apartment at the time of the robbery.

In rebuttal, the State called an employee of the Oak Park Police Department who testified he had been unable to find a traffic accident report in the defendant's name during the period in which the defendant claimed to have wrecked his Cadillac. A girlfriend of the defendant's was also called and testified that the defendant was driving a blue Cadillac the entire month of March 1972.

The first issue we will address is whether the arrest was made without probable cause. The defendant argues that the information provided over the phone by the person identifying himself as an employee of Whoopy's does not amount to probable cause to arrest the defendant.

■■■ In *People v. Parren* (1962), 24 Ill. 2d 572, 182 N.E.2d 662, the Illinois Supreme Court explained the standard to be applied:

"Although information provided by an anonymous informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency [citation], an arrest may not be based solely on such information [citations], and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable." (24 Ill. 2d 572, 576-77, 182 N.E.2d 662, 664-65.)

While the phone call in this case was not strictly an anonymous one, it similarly is not clearly a case of a "citizen informer" which would carry a presumption of reliability. (*People v. Martin* (1977), 46 Ill. App. 3d 943, 361 N.E.2d 595; *People v. Evans* (1975), 32 Ill. App. 3d 865, 336 N.E.2d 792.) While we do not decide which category is most appropriate here, under the stricter "anonymous informant" standard we find sufficient indicia of reliability surrounding the phone call to satisfy the probable cause requirement. Officer Flynn, the arresting policeman, testified that the car described on the phone matched the description of the car previously given to the police and that he was aware of this fact before making the arrest. Flynn knew of the police report which described the robbery car as a 1965 or 1966 blue two-door Cadillac, and this description corresponded with the one given over the phone. Although not clear from the record, it also seems likely that Flynn was able to confirm the

description of the car and its license number before arresting the defendant at the described location and in the described vehicle. When Flynn found the defendant at the specified location he also discovered that the defendant's physical appearance and clothing matched the description given by the caller. We conclude that under the facts and circumstances described, Officer Flynn had probable cause and reasonable grounds to believe that the defendant was the driver of the car at the Whoopy Burger robbery. Because there was probable cause to arrest the defendant the subsequent identifications were not tainted as the "fruit of the poisonous tree."

■ The defendant's next argument is that the identification at the lineup was unnecessarily suggestive. An impermissibly suggestive lineup violates a defendant's due process rights and is inadmissible at trial. (*Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375.) Nevertheless, this issue is mooted if an independent basis can be found for the in-court identification. (*People v. Connolly* (1973), 55 Ill. 2d 421, 303 N.E.2d 409.) in *People v. Jackson* (1974), 24 Ill. App. 3d 700, 321 N.E.2d 420, the court noted "[w]here there has been ample opportunity to observe the culprits at close range under good lighting and detailed descriptions of the culprits are given to police, notwithstanding a tainted lineup, there is a sufficient independent origin to the in-court identification to render that identification admissible." 24 Ill. App. 3d 700, 705, 321 N.E.2d 420, 424.

■ We find that there was an independent basis for Williams' in-court identification of the defendant. Williams testified that he had seen the defendant three or four times before the night of the robbery; he had seen the defendant get out of his car on more than one occasion; he had seen the defendant inside Whoopy's and had spoken to him there; he saw the defendant in the restaurant the night before the robbery; and he saw Alexander the night of the robbery both before and after the perpetration of the crime. Williams also gave the police a fairly detailed description of the defendant, his clothing, and his car, though the description did not include facial features. This description of the defendant and his car was corroborated at the time of his arrest. We, therefore, find that whether the lineup was suggestive is irrelevant because the State established a sufficient independent basis to justify the in-court identification.

Finally, the defendant contends the in-court identification by Williams was insufficient to sustain the conviction. The witness was able to make a positive identification of Alexander based on his opportunities to see the defendant on the night of the robbery and on a number of occasions before the robbery. A positive identification by a single witness who has ample opportunity for observation is sufficient to support a conviction. (*People v. Clarke* (1971), 50 Ill. 2d 104, 277 N.E.2d 866.) This is true even

though the testimony of that witness is contradicted by the defendant's testimony, or there are alibi witnesses testifying for him. *In re Williams* (1974), 24 Ill. App. 3d 593, 321 N.E.2d 281.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

McNAMARA and SIMON, JJ., concur.