THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GERALD CALIENDO, Defendant-Appellant.

First District (5th Division)    No. 78-1148

Opinion filed May 9, 1980.—Rehearing denied June 13, 1980.

Sam Adam and Arnette R. Hubbard, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Terence P. Gillespie, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was found guilty of aggravated battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—4) and was sentenced to a period of four years imprisonment. On appeal, defendant raises the following issues: (1) the element of "great bodily harm" contained in the Illinois aggravated battery statute and in count I of the indictment violates his constitutional rights to be informed of the nature and cause of the accusation against him and to due process of law (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§8, 2); (2) count II of the indictment charging him with aggravated battery fails to allege the elements of the offense and is therefore fatally defective; (3) the State's failure to disclose statements made by defendant in violation of Supreme Court Rule 412(a)(ii) (Ill. Rev. Stat. 1975, ch. 110A, par. 412(a)(ii)) deprived him of a fair trial; and (4) the State failed to prove him guilty beyond a reasonable doubt.

On April 25, 1977, at 7:30 a.m. Frank Matarrese entered his garage to drive his car to work. He opened the overhead door to the garage and got into his car. At this time, Louis Giordano and defendant entered the garage. Matarrese had never before seen either of these men. They were wearing dark coats and stocking caps pulled down midway over their foreheads, and Giordano had a hammer in his hand. They walked to the left side of Matarrese's car where defendant told Matarrese to get out of the car. Matarrese's panic prevented him from driving out of the garage; instead, he began blowing the horn and calling for help. Giordano reacted to Matarrese's screams by breaking the driver's window with the hammer. Matarrese attempted to escape out of the passenger door, but as

he opened the door, Giordano grabbed him, threw him to the ground, and began hitting him with the hammer while defendant held him against the ground. When the hammer broke, Giordano picked up a metal bar and continued to hit Matarrese on the legs with the metal bar. They also kicked him in the ribs throughout the five-minute beating. Defendant told Matarrese: "This could be worse. We could come back." Both men fled into the alley, when Anthony Laterza, Matarrese's brother-in-law, came into the garage.

From his kitchen window, Anthony Laterza watched Frank Matarrese enter the garage on the morning of April 25, 1977. A few minutes had passed when he noticed several people moving about inside the garage. He went to investigate. Upon entering the garage, he heard Matarrese moaning and hollering. He then saw Matarrese lying on the floor with two men beating him. He yelled at the assailants, and they left the garage and ran down the alley. He never saw the faces of these men, but noticed they were wearing dark coats and caps.

Laterza called the police for an ambulance which took Matarrese to the hospital. As a result of the attack Matarrese sustained three fractured ribs and lacerations and contusions of the hands and legs.

On October 31, 1977, Matarrese met with police officers Jan Francis and Hugh O'Hagan. They showed him a group of 11 black-and-white photographs out of which he picked photographs of Louis Giordano and defendant as his assailants. While defendant and Giordano had mustaches on the day of the attack, only three of the 11 photographs depicted men with mustaches. The next time Matarrese saw the defendant in person was on the first day of trial, May 18, 1978.

At trial, it was stipulated that on April 25, 1977, Frank Matarrese's car was dusted for fingerprints, and a palm print was found on the left front windshield of the car. This print matched the palm print of Louis Giordano.

Defendant testified that in April 1977, he worked as a plumber for Arrow Plumbing Company during the day, and as a short order cook for Grand Bowling Alley at night. He was neither present in Matarrese's garage on April 25, nor did he participate in the attack on Matarrese. Prior to this trial, he had never before seen Matarrese. He admitted, however, knowing Giordano since high school, but denied being related to him.

On cross-examination he admitted that on December 14, 1977, he appeared, without counsel, before Judge DeVito and told Judge DeVito that Louis Giordano was his cousin. On December 15, 1977, he appeared before Judge Mahon and again stated that Giordano was his cousin. Defendant explained that he lied about his relationship to Giordano in order to speak with Giordano and learn why he was being charged with this crime.

Opinion

Defendant maintains that the Illinois aggravated battery statute (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(a)) is unconstitutionally vague. More specifically, defendant argues that the phrase *"great* bodily harm" of the aggravated battery statute is vague and uncertain, and constitutes the sole distinction between conviction for battery, a misdemeanor under section 12—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—3), and conviction for aggravated battery, a felony under section 12—4(a) of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(a)). The scope of the word "great" is the target of the defendant's attack. Section 12—3 provides:

> "A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." (Ill. Rev. Stat. 1975, ch. 38, par. 12—3.)

In comparison, section 12—4(a) provides:

> "(a) A person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery." (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(a).)

Thus, according to the defendant, the undefined reach of the phrase, "great bodily harm" denies him the opportunity to choose between legal and prohibited conduct and fails to guide the trier of fact in its deliberations.

■■ Generally, a statute carries a presumption of constitutionality and any doubts are to be resolved in favor of upholding the statute. (*People v. McPherson* (1978), 65 Ill. App. 3d 772, 382 N.E.2d 858.) Furthermore, where a statute has withstood the test of time, there is a strong presumption, although not conclusive, of its validity. (*People v. Schoos* (1973), 15 Ill. App. 3d 964, 305 N.E.2d 560, *appeal dismissed* (1974), 417 U.S. 963, 41 L. Ed. 2d 1135, 94 S. Ct. 3165.) The evils of vague criminal laws were described by the United States Supreme Court in *Grayned v. City of Rockford* (1972), 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 227-28, 92 S. Ct. 2294, as follows:

> "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement

is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

When reviewing a charge of vagueness, we recognize that since criminal statutes are limited to words as their medium, mathematical certainty can never be expected. (*Grayned.*) Accordingly, neither the United States nor the Illinois Constitution impose impossible burdens of specificity on criminal statutes. (*United States v. Petrillo* (1947), 332 U.S. 1, 91 L. Ed. 1877, 67 S. Ct. 1538; *Schoos.*) The statute need only convey sufficient definite warning as to proscribed conduct when measured by common understanding and practices. *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607.

Defendant maintains that the use of the phrase "great bodily harm" fails to give him adequate warning as to whether his conduct will be prosecuted as a felony, aggravated battery, or as a misdemeanor battery. The legality of defendant's conduct is not in doubt; it was clearly prohibited either as a misdemeanor or as a felony. Rather, defendant claims a constitutional right to be warned of the exact degree of punishment which follows prohibited conduct. To our knowledge, neither the United States nor the Illinois constitutions provide such a right. (See *People v. Hanson* (1972), 53 Ill. 2d 79, 289 N.E.2d 611, *cert. denied* (1973), 411 U.S. 937, 36 L. Ed. 2d 398, 93 S. Ct. 1916.) Both constitutions require only that a person of ordinary knowledge have fair warning that certain conduct is prohibited. (*Grayned.*) This constitutional protection is designed to allow an individual to steer between lawful and unlawful conduct. However, this constitutional protection does not extend to an individual's choice between two different forms of prohibited activity. Here, the Illinois Criminal Code (Ill. Rev. Stat. 1975, ch. 38, pars. 12—3 and 12—4(a)) afforded defendant fair warning that his conduct was prohibited.

Next, defendant maintains that the phrase "great bodily harm" grants excessive latitude to the jury in its determinations. Without adequate guidelines for the trier of fact, arbitrary and discriminatory enforcement of the statute becomes a distinct possibility. Thus, defendant claims similar conduct by defendants in two different cases resulting in identical injuries to the respective victims may be found great bodily harm by one trier of fact and not by another.

Borderline cases wherein a degree of uncertainty exists as to the applicability of an enactment do not render the enactment unconstitutional as to conduct about which no uncertainty exists. (*People v. Witzkowski* (1972), 53 Ill. 2d 216, 290 N.E.2d 236, *appeal dismissed*

(1974), 411 U.S. 961, 36 L. Ed. 2d 682, 93 S. Ct. 2162; *People v. Vandiver* (1971), 51 Ill. 2d 525, 283 N.E.2d 681; and *People v. Virgin* (1978), 60 Ill. App. 3d 964, 377 N.E.2d 846.) Here, defendant participated in the severe beating of Frank Matarrese with a ball-peen hammer and a metal bar causing three fractured ribs and lacerations and contusions of the hands and legs. Since there is no doubt that defendant knowingly and intentionally caused great bodily harm to Matarrese, we will not conjecture on possible misapplication of this statute.

■■ Additionally, we note that both the United States and the Illinois Supreme Courts have held that a statute need not be more specific than is possible under the circumstances. (*United States v. Petrillo* (1947), 332 U.S. 1, 91 L. Ed. 1877, 67 S. Ct. 1538; *Witzkowski.*) In section 12—4(a) the legislature did not choose to delineate all of the myriad kinds of injuries or consequences which may fall within the pale of the statute. The futility of such a task is obvious. Rather, the legislature employed the general terms "great bodily harm, or permanent disability or disfigurement" to provide the statute with the necessary flexibility to prohibit, and punish as a felony, an individual's intentional conduct which causes serious injuries to innocent victims. No constitutional provision requires the legislature to predict and define every set of circumstances which constitute aggravated battery. In our opinion, a modicum of flexibility, which admittedly creates a degree of uncertainty, is often necessary to fulfill the legislative purpose. We therefore reject defendant's constitutional attack on this statute.

■■ Defendant also contends the indictment fails to charge the necessary elements of the offense of aggravated battery as required by section 111—3(a)(3) of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 111—3(a)(3)). The indictment contained two counts. Count I charged that defendant and Louis Giordano "committed the offense of Aggravated Battery in that they, intentionally and knowingly, without legal justification, committed a battery on Frank Matarrese which caused great bodily harm to said Frank Matarrese in violation of Chapter 38, Section 12—4, of the Illinois Revised Statutes, 1975." Count II charged that defendant and Louis Giordano "committed the offense of Aggravated Battery in that they, in committing a battery on Frank Matarrese used a deadly weapon, in violation of Chapter 38, Section 12—4(b—1) of the Illinois Revised Statutes, 1975." Both counts contain the essential allegation that defendant committed a battery on Frank Matarrese. Relying on *People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171, defendant correctly states that count II of the indictment is fatally defective for failing to allege one of the alternative methods of committing a battery, *i.e.*, intentionally or knowingly (1) causing bodily harm to another, and (2) making physical contact of an insulting or

provoking nature with another. In *Lutz* these defects were raised in defendant's motion in arrest of judgment and resulted in reversal of defendant's conviction for aggravated battery. We must decide whether reversal is called for in the present case.

Initially, we note that defendant failed to raise this issue either in a pretrial motion to dismiss the charge (Ill. Rev. Stat. 1975, ch. 38, par. 114—1(a)(8)), or in a post-trial motion in arrest of judgment (Ill. Rev. Stat. 1975, ch. 38, par. 116—2(b)(1)). Our supreme court has stated that an indictment attacked for the first time on appeal is to be reviewed under a different standard than if challenged either in a pretrial or post-trial motion. (*People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437.) Faced with a similar situation, our supreme court stated:

> "While we do not approve, and indeed find it difficult to understand, failure to strictly comply with the explicitly stated requirements of section 111—3(a) of the Code of Criminal Procedure, the sufficiency of an information or indictment attacked for the first time on appeal is not to be determined by whether its form follows precisely the provisions of the statute. When attacked for the first time on appeal an information or indictment is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecutions arising out of the same conduct." (*People v. Gilmore* (1976), 63 Ill. 2d 23, 29, 344 N.E.2d 456, 460; *People v. Williams* (1979), 79 Ill. App. 3d 806, 398 N.E.2d 1013.)

We must decide the validity of this indictment under the above standard and not under a more demanding standard which would be applicable if this challenge were raised either in a timely pretrial or post-trial motion.

Both counts of the indictment charge the defendant with commission of the offense of aggravated battery and specify the exact statutory reference. We find it apparent from the record that defendant was aware of the charge against him and of the elements of that offense. Moreover, defendant's trial defense consisted solely of his denial of the identification testimony by the victim, Frank Matarrese. Neither during the trial nor in the post-trial motion did defendant claim that the State failed to prove either of the alternative methods of committing a battery which was the defect in the indictment. From a review of the entire record, we conclude that the indictment apprised defendant of the precise charge with sufficient specificity to enable him to prepare his defense.

■ We must now determine whether defendant's conviction for aggravated battery can be pleaded as a bar to future convictions arising out of the same conduct. Our supreme court has held that a court may

resort to the record of a prior prosecution to determine whether the prior prosecution is a bar to future prosecutions arising out of the same conduct. (*People v. Jones* (1973), 53 Ill. 2d 460, 292 N.E.2d 361.) Resort to the record in this case reveals that the offense of which the defendant was convicted is specifically identifiable in terms of date, time, location, and identity of the victim. Consequently, we conclude that defendant's conviction for aggravated battery can be successfully pled as a bar to future prosecutions arising out of the same conduct.

The next issue raised by the defendant involves an alleged violation by the State of the discovery rules. Defendant contends that the State failed to disclose two statements made by him and then used those statements to impeach him on cross-examination. Prior to trial, defense counsel specifically requested in writing all statements made by defendant which were known to the State. In its answer to defendant's discovery motion, the State replied: "The defendant herein made no statement except to state his name, age and address." At trial, defendant denied involvement in the beating of Frank Matarrese. On cross-examination, defendant admitted having known Louis Giordano since high school, but denied telling anyone that Giordano was his cousin. Under further questioning, however, defendant admitted that at two prior court appearances in this case, he told the presiding judge that he was a cousin of Giordano. Defense counsel claimed complete surprise as to the existence of these statements. Based on these facts, defendant maintains that the State violated Supreme Court Rule 412(a)(ii) and deprived him of a fair trial.

■■ Pretrial discovery in criminal cases is designed to promote the truth-finding process and to eliminate surprise as a tactical advantage for either side. (*People v. Szabo* (1977), 55 Ill. App. 3d 866, 371 N.E.2d 117.) Supreme Court Rule 412(a)(ii) provides:

> "Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:
>
> ❋ ❋ ❋
>
> (ii) *any* written or recorded statements and the substance of *any* oral statements made by the accused or by a co-defendant, and a list of witnesses to the making and acknowledgment of such statements." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 110A, par. 412(a)(ii).)

The words embodied in this rule leave no doubt that it includes all statements regardless of whether they were made in the deepest bowels of a police station or in an open courtroom. Further, Supreme Court Rule

412(a)(ii) provides no exception for innocent or inadvertent suppression of statements by the State. *Cf. People v. Loftis* (1977), 55 Ill. App. 3d 456, 370 N.E.2d 1160.

■■ ■ In the present case, defendant on two occasions stated that Louis Giordano was his cousin. Neither of these statements was disclosed to defense counsel until the cross-examination of defendant had commenced. By proceeding in this manner, the State violated Supreme Court Rule 412(a)(ii). The State maintains that the relevance of these statements was not known until after defendant took the stand, and therefore the State had no duty to disclose those statements until that time. This argument implied that the discovery rule has a threshold requirement of relevancy which is to be determined by the State. We most strongly disagree. Supreme Court Rule 412(a)(ii) carries no requirement of relevancy and the State's duty to disclose does not depend upon an independent evaluation by the State of the relevance of the subject statements. All statements described by Supreme Court Rule 412(a)(ii) must be disclosed prior to trial.

Our attention now turns to the question of whether the State's violation of the discovery rule is harmless error. We begin by analyzing the possible significance of the use of these statements on cross-examination. First, the statements served to link the defendant to Louis Giordano whose palm print was found at the scene of the attack. This link, however, had been established by the defendant's admission on cross-examination that he had known Giordano since high school. Second, the prior inconsistent statements served to impeach the credibility of defendant. We note that defendant was allowed to explain on redirect his motivation for making these statements. More importantly, the prejudicial impact of this impeachment is minor relative to the strength of the State's case. Frank Matarrese had approximately five minutes under natural light to observe his attackers. The attackers were in close proximity to him throughout the beating. Six months after the attack, Matarrese made a positive identification of defendant from a group of photographs. Finally, Matarrese during the trial made a positive identification of the defendant as his attacker. We note that where the identification of the accused is at issue, a positive identification by a single witness, who had ample opportunity for observation, will be sufficient to sustain the defendant's conviction. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) Thus, in light of the overwhelming weight of the evidence against the defendant, the State's violation of Supreme Court Rule 412(a)(ii) constitutes harmless error. See *People v. Stamps* (1977), 52 Ill. App. 3d 320, 367 N.E.2d 543; *People v. Brooks* (1976), 37 Ill. App. 3d 66, 344 N.E.2d 662.

■■ Defendant's final contention on appeal is that the State failed to

prove him guilty beyond a reasonable doubt. This argument consists of two attacks on the State's evidence; first, the alleged suggestive nature of the pretrial identification of the defendant; and second, alleged inconsistencies in the testimony of the victim. With regard to defendant's claim of suggestiveness in the pre-trial identification, we hold that defendant has waived any argument of a due process violation by failing to raise the issue in a pretrial motion or at trial. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Bracy* (1973), 14 Ill. App. 3d 495, 302 N.E.2d 747.) Defendant also maintains that the alleged suggestiveness of the pretrial identification seriously undermines the strength of the State's case. Our review of this argument is contained in the following discussion.

■■ A reviewing court will not set aside a jury's verdict unless the evidence is so improbable or palpably contrary to the verdict as to raise a reasonable doubt of guilt. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666.) Determining the credibility of the witnesses and assigning the weight to be given to their testimony and the inferences to be drawn therefrom is the function of the jury. (*People v. Harris* (1972), 53 Ill. 2d 83, 288 N.E.2d 873.) As we noted above, a positive identification by a single witness, who had ample opportunity for observation, will be sufficient to sustain the conviction where identification of the accused is at issue. (*Stringer.*) This remains true even though the testimony of the identification witness is contradicted by the defendant's testimony. (*People v. Alexander* (1978), 65 Ill. App. 3d 559, 382 N.E.2d 519.) Finally, where the evidence is merely conflicting, a court of review will not disturb the jury's decision. *People v. Morris* (1979), 79 Ill. App. 3d 318, 398 N.E.2d 38.

■■ In the present case, the victim, Frank Matarrese, had more than ample opportunity to observe defendant under good lighting conditions during the attack. Matarrese was able to make a positive identification of defendant before trial and again at trial. In addition, defendant was linked to the palm print of Louis Giordano by their high school friendship. After a careful examination of the entire record, we conclude the evidence was not so improbable or unreasonable as to raise a reasonable doubt of defendant's guilt. (*Yarbrough.*) Defendant maintains that discrepancies in the testimony of Matarrese and the suggestive nature of the pretrial identification procedure create a reasonable doubt as to defendant's guilt. These alleged discrepancies affect only the weight of the witness' identification testimony and the jury is free to accept or reject as much or as little of a witness' testimony as it pleases. (*People v. Harrison* (1978), 57 Ill. App. 3d 9, 372 N.E.2d 915; *People v. Beasley* (1977), 54 Ill. App. 3d 109, 369 N.E.2d 260.) Alleged suggestiveness in a constitutionally valid pretrial identification procedure affects only the

weight of the identification testimony, and not its validity. In this case, the jury who saw and heard the evidence chose to believe the testimony of Frank Matarrese, and we find no reason to reverse that determination. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.