THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RONALD HENDERSON, Defendant-Appellant.

First District (4th Division)    No. 79-600

Opinion filed April 23, 1981.

T. Lee Boyd, Jr., of Boyd, Gant & Spence, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Gerald E. Nora, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

At the conclusion of a jury trial, defendant, Ronald Henderson, was found guilty of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2). He was sentenced to a term of 12 years.

On appeal, defendant contends: (1) the police lacked probable cause to arrest him; and (2) assuming the police had probable cause, no exigent circumstances existed for the police to arrest him in his home without a warrant.

We affirm.

From the evidence presented at a preliminary hearing concerning defendant's arrest, the trial court could have found the following facts to exist.

On October 4, 1976, a homicide investigator, Michael Fleming, was carrying on a continuous investigation into a homicide that had occurred during an attempted armed robbery in a tavern on the west side of Chicago. (This attempted robbery was not the offense for which defendant was convicted in this case.)

On October 4, Fleming met with an unidentified informer in the general neighborhood in which the homicide had occurred. Fleming had never met or used this informer before this meeting. Upon questioning, the informer told Fleming he knew of a "stick-up crew" that had been involved in a series of recent armed robberies in the neighborhood. He said he knew the members of the "stick-up crew" personally and one of them had told him the "stick-up crew" had been involved in the incident Fleming was investigating. He said he had been told that a patron had been shot in the incident and the perpetrators had failed to gain any proceeds from that crime. This information verified Fleming's knowledge of the facts of the incident. The informer told Fleming the names of five individuals who were members of the "stick-up crew." Included among the individuals named were defendant, Sam Willis, and James Dean.

The informer told Fleming that defendant lived in an apartment located in an apartment complex containing at least 100 units. The informer told Fleming the address of the apartment complex but did not tell him in which apartment defendant lived.

The informer also told Fleming that one of the members of the crew had told him about a recent robbery of a tavern located on North Cicero Avenue several blocks north of Madison Street. (This also was not the robbery for which defendant was convicted in this case.) The informer said that he knew a chrome revolver had been taken in that robbery, and he had recently seen this revolver in defendant's apartment.

On the next day, October 5, Fleming met with the informer again at the police station. At this time, Fleming had a crime analysis pattern report which had been prepared by the police robbery division. This

report listed the results of investigations into three recent armed robberies of taverns. Included in the report was the robbery mentioned by the informer which occurred on North Cicero, and a robbery which had occurred on September 30, 1976, in the 3800 block of West Huron. (This latter robbery is the one for which defendant was convicted in this case.)

The report also contained a general description of the robbers involved in each incident. Fleming elicited from the informer descriptions of the five individuals who were members of the "stick-up crew." It appears that the descriptions given by the informer generally matched the descriptions in the report.

At 1 a.m. on October 6, Fleming arrested James Dean, one of the individuals whose name had been given to Fleming by the informer. Dean, who was arrested on a public sidewalk, denied any involvement in any crime. However, Dean told Fleming the apartment number in which defendant lived and told Fleming that Sam Willis, another individual mentioned by the informer, also lived there.

While Dean was being transported to the police station by another officer, Fleming proceeded to the location of defendant's apartment. Outside, he was met by two other police officers. One officer went around to the rear entrance to the apartment while Fleming and the other officer went to the front door. Fleming knocked and a person inside asked who was there. Fleming said it was the police and the door was then opened by defendant.

As the door opened, Fleming looked into the apartment and saw Willis eight feet away sitting on a couch. At that moment, Fleming saw Willis raise up his arm. Willis was holding a chrome revolver in his hand. Apparently, as Fleming rushed in through the doorway, Willis threw the revolver out a nearby window. Defendant and Willis were placed under arrest. The revolver was later recovered outside.

Opinion

## I

■■ The first contention raised by defendant is that the police lacked probable cause to arrest him. Probable cause to arrest exists when a reasonable and prudent person, in possession of the knowledge which has come to the arresting officer, would believe that the person to be arrested has committed a crime. (*People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056.) Defendant apparently concedes that the information given by the informer, if true, was sufficient to establish probable cause. It is defendant's position, however, that the informer was not an "ordinary citizen" informer and thus his information could not be assumed to be reliable, and the informer's information was uncorroborated by any other facts known to police, and thus the information given to police should

have been deemed unreliable, thereby preventing probable cause from existing in this case. (See *People v. Parren* (1962), 24 Ill. 2d 572, 182 N.E.2d 662; *People v. Padilla* (1979), 70 Ill. App. 3d 406, 387 N.E.2d 985; *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509.) However, we believe the informer's information was sufficiently corroborated, and thus the police could have properly believed the information was reliable.

■■ There were at least four corroborating elements in this case. First, the informer, when he first met Fleming, told Fleming that one of the members of the "stick-up crew" had told him that, in the incident Fleming was investigating, the perpetrators had failed to gain any proceeds from the crime. This fact was true according to Fleming's own investigation. Second, during the first meeting, the informer told Fleming that he knew the "stick-up crew" had been involved in a tavern robbery on North Cicero. At the time, Fleming himself did not know of this robbery, but the next day he learned from the crime report he received from the robbery division that such a robbery had occurred. Third, the descriptions of the five named individuals given to Fleming by the informer in their second meeting generally matched the descriptions of individuals contained in the crime report. Fourth, the informer said he knew that the members of the "stick-up crew" had been involved in a series of recent tavern robberies in the neighborhood. The crime report showed that the same individuals were involved in at least three different tavern robberies in the neighborhood. It is likely that only the police and an informer with inside information could know that a series of robberies involved the same perpetrators.

Because of the foregoing corroborating factors, we necessarily find that the police could have properly assumed that the informer's information was reliable. Thus, we hold that on October 5, 1976, following Fleming's second meeting with the informer, the police had probable cause to arrest defendant.

## II

Defendant next contends that the warrantless arrest of defendant in his apartment was improper because no exigent circumstances existed to justify such an arrest. Police cannot enter a person's apartment or home to effect a warrantless arrest of that person based on probable cause alone. There must be factors of exigency justifying prompt police action (*People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543; *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371), or a showing of consent to enter (*People v. Bean* (1981), 84 Ill. 2d 64). Though there was no consent in this case, we believe that sufficient exigent circumstances existed to justify the police entry of defendant's apartment to arrest him.

Many factors may be considered to determine whether prompt police action is necessary to enter an apartment or other dwelling and effect an arrest without a warrant. Among the factors that may justify such an interest are the following: (1) a grave offense is involved, particularly a crime of violence; (2) the suspect is believed to be armed; (3) there exists not merely the minimum of probable cause but a clear showing of probable cause; (4) there is strong reason to believe the suspect is in the premises being entered; (5) there is a likelihood the suspect may escape if not swiftly apprehended; (6) the entry into the premises is peaceful; and (7) there has been no unjustified and inordinate delay in which time a warrant could have been obtained. (See *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543; *People v. Thompson* (1981), 93 Ill. App. 3d 995, 418 N.E.2d 112; *People v. Davis* (1981), 93 Ill. App. 3d 217.) These factors are not exclusive, and not all of them need be present. The ultimate question is whether the police acted reasonably. *People v. Davis* (1981), 93 Ill. App. 3d 217.

Admittedly, some of the above factors were not present in this case. Absent perhaps was the *clear* showing of probable cause. The entry apparently was not peaceful. Also, there was a delay of almost half a day in which the police could have obtained an arrest warrant. The State argues there was no actual delay because the police did not know defendant's precise address until shortly before the arrest. However, all that was needed was a general arrest warrant based upon probable cause. A search warrant specifically describing the place to be searched was not necessary since a general arrest warrant carries with it the implicit authority to enter the suspect's dwelling to effect the arrest when he is reasonably believed to be inside. *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.

■■■ Nevertheless, though there was delay in this case, that factor alone does not mean that exigent circumstances did not exist. Exigent circumstances may arise after police have had time to procure a warrant, and when this occurs the police may still act without a warrant. (*People v. Davis* (1981), 93 Ill. App. 3d 217; *Cardwell v. Lewis* (1974), 417 U.S. 573, 41 L. Ed. 2d 325, 94 S. Ct. 2464.) Also, it is the unauthorized entry into the apartment or other dwelling to effect the warrantless arrest that is considered repugnant, and thus a court, in determining whether exigent circumstances exist, must examine all of the circumstances which occurred before the moment of entry and then ask if those circumstances justified prompt police action. *People v. Davis* (1981), 93 Ill. App. 3d 217.

■■ In this case, there are several elements of exigency that justify the arrest of defendant without a warrant. First, the investigation centered on defendant's involvement in a crime of violence, armed robbery. In fact, not only was defendant believed to have been involved in the armed

robbery for which he was convicted here, but was also believed to have been involved in a homicide which had occurred in a different incident. Additionally, the police reasonably believed that defendant was involved in a series of armed robberies, and the police could have reasonably believed that defendant and his companions could strike again at any moment.

Second, the police had reason to believe defendant was armed. The police had probable cause to believe defendant was involved in armed robberies which had been committed with firearms. The informer had told police he had seen a chrome revolver in defendant's apartment.

Third, after the police had arrested James Dean, there came into being the possibility that defendant could be forwarned of his impending arrest and could thus effect his escape. Dean and defendant were believed to be equally involved in the series of armed robberies. Dean was arrested in a public area. One with police experience could reasonably foretell that information of a co-offender's arrest could travel swiftly to his companions.

Fourth, and finally, the entry itself in this case had circumstances of exigency. There was no doubt defendant was inside because he opened the door. More important, when the door was opened, the police immediately saw Willis with a chrome revolver in his hand. Though the revolver was thrown out the window and not used against the police, what the police saw in the instant all this occurred demanded immediate action. A police officer cannot be expected to stand immobile outside of an open door looking into an apartment merely because he has no warrant to enter when he sees a criminal suspect with a gun in his hand. The instant after the police saw the gun they effected an entry. Though the police apparently rushed in and the entry could be considered forceful, in the circumstances no other kind of entry was reasonable.

Because of all of the foregoing, we believe that sufficient exigent circumstances existed which necessitated prompt police action, and that defendant's contention that his warrantless arrest was unlawful is without merit.

Accordingly, for the reasons noted, we affirm the conviction of defendant.

Affirmed.

JIGANTI, J., concurs.

Mr. JUSTICE JOHNSON, dissenting:

I respectfully dissent from the majority opinion and would reverse under *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.

According to the evidence at trial, Officer Fleming met with an informer on October 4, 1976, who described defendant and others as participants in a series of armed robberies. The informer described the weapon involved as a chrome or silver revolver and said that it was in defendant Henderson's apartment. Subsequently, on October 6, 1976, Henderson was arrested in his home without a warrant.

Warrantless entries into the home, absent exigent circumstances, are per se unconstitutional. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.) The basis of this principle is deeply rooted in the fourth amendment which is applicable to the States through the fourteenth amendment to the United States Constitution.

> "The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their . . . houses . . . shall not be violated.' That language unequivocally established the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' [Citation.] In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton*, 445 U.S. 573, 589-90, 63 L. Ed. 639, 653, 100 S. Ct. 1371, 1381-82.

It has oftentimes been said that a fundamental purpose of the constitutional right to be free from unreasonable searches and seizures is to shield a person from unwarranted governmental intrusions into his reasonable expectations of privacy. (*Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507.) Nowhere is there a greater expectation of privacy than in the confines of a person's home.

The majority cites *People v. Davis* (1981), 93 Ill. App. 3d 217, as authority for warrantless searches. However, *Davis* involved the search of an automobile. The "automobile exception" allows warrantless searches because the expectation of privacy in an automobile is much less than the expectation of privacy in a home. Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and control. Further, the inherent mobility of an automobile creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible. *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092.

In the instant case, exigent circumstances were not such as to require

defendant's arrest at night in his home. There was a sufficient amount of time for the police to obtain a warrant. Moreover, I cannot justify defendant's arrest in his home based on developments that occurred after the arrival of the police. The majority seems to believe that once defendant opened his door, an immediate arrest was justified due to the gun being seen by the police. I would hold that circumstances must exist in order to justify going into the home without a warrant.

I would reverse.