THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARRY STURDIVANT, Defendant-Appellant.

First District (2nd Division)    No. 80-1103

Opinion filed August 11, 1981.

Ralph Ruebner and Richard E. Cunningham, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Georgia A. Buglass, and Sheila M. King, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant Harry Sturdivant was charged with murder and attempt (armed robbery). Following a bench trial, defendant was convicted of attempt and sentenced to 12 years in the Illinois Department of Corrections. On appeal, defendant asserts that his arrest was without probable cause and that his post-arrest statements were the fruits of his illegal arrest and should therefore have been suppressed. Defendant also contends that his sentence is excessive.

On August 9, 1978, a shooting occurred at the White Front Liquor Store in Chicago. Thomas Nichols, an employee, was walking toward a cooler at the rear of the store when he noticed a young black man wearing a flowered shirt enter the store. Moments later, Nichols heard a gunshot. He returned to the front of the store and found Gus Michaels, the night manager, fatally wounded. No cash was missing from the register. Nichols was unable to identify the offender.

On January 23, 1979, Chicago police questioned Norvell Pickett. The record on appeal does not reveal whether Pickett was a suspect in the Michaels killing or whether he was being held in connection with some other matter. It appears, however, that Pickett was in custody and in the presence of his attorney when he gave police information relative to the shooting of Michaels. Pickett related that some time after the shooting Harry and Charles Sturdivant came to Pickett's home. The Sturdivant brothers told Pickett that they had entered the liquor store with two individuals named Terl and Greg, intending to rob the store. During the robbery, Gus Michaels moved for his gun and Charles Sturdivant shot him. Defendant showed Pickett a .25-caliber nickel-plated automatic pistol and a brown suede holster with a belt clip. Defendant told Pickett that he had taken the gun and holster from Michaels' body. A police officer later testified that Thomas Nichols told police that Gus Michaels always carried a pistol and holster similar to those described by Pickett, and that these items were not found on the body after the shooting. Pickett also gave the police descriptions and addresses of the four individuals.

On the morning of January 25, 1979, two police officers went to defendant's home. Defendant voluntarily accompanied the officers to the police station. Defendant was questioned intermittently by police and, approximately nine hours after his arrest, he admitted involvement in an attempted armed robbery at the White Front Liquor Store. About three hours later, defendant gave a more detailed oral statement to an assistant State's Attorney.

According to defendant's statement, the participants in the crime were himself, Charles Sturdivant, Terl Kennard, and James Dickerson. Defendant stated that Dickerson and Charles Sturdivant had met Kennard

and defendant on the street and informed them that they planned to rob the liquor store. Charles Sturdivant and Dickerson offered Kennard and defendant money if they would go in the liquor store and "act natural." Defendant then walked into the store and surveyed the potato chip rack and the soft drink cooler. A few minutes later, Dickerson and defendant's brother entered the store and announced a holdup. When the manager made a quick move, defendant heard a shot and saw him fall. Defendant did not see the shot fired, but stated that only Dickerson carried a gun into the store. All of the participants then fled.

Before trial, defendant moved to suppress his post-arrest statements, arguing that they were the fruits of an illegal arrest. The court held a hearing and denied the motion.[1] At trial, the court heard detailed testimony regarding defendant's statements. The trial court also heard testimony from Gregory Bell. Bell testified that on the night of the shooting Harry and Charles Sturdivant came to his home and announced, "We done made a sting." Defendant was wearing a flowered shirt at the time. Terl Kennard came to Bell's home a short time later and the four proceeded to smoke "reefers" and drink alcohol.

After hearing the evidence, the trial court found defendant not guilty of murder and guilty of attempt (armed robbery). Defendant was sentenced to a term of 12 years' imprisonment.

The first issue is whether the police had probable cause to arrest defendant. The State maintains that defendant voluntarily accompanied the officers to the police station, and that no arrest occurred until after defendant had made an oral statement regarding the attempted robbery. In *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248, the United States Supreme Court made it clear that when a defendant has been detained for a custodial interrogation, the detention must be supported by probable cause. The formalities accompanying a traditional "arrest" are not controlling. (See *Dunaway*, at 215-16.) There is no question that the defendant in the instant case was involuntarily detained for investigative purposes. The State argues that defendant's presence in the interrogation room was voluntary and the State impliedly asks us to believe that defendant freely chose to remain in the police station for approximately 9 hours. Given the circumstances of the case, we reject this notion and find that defendant was under arrest when he left his apartment with the police.

■■ At the time of the arrest, police had only Norvell Pickett's statement to link defendant to the shooting. Probable cause for a warrantless arrest can be based on information provided by an informant, but only if the

---

[1] After the motion was denied by another judge, the case was assigned to Judge Crowley who presided at the trial.

informant's reliability has been previously established, or if the information is independently corroborated. (See *People v. McClellan* (1966), 34 Ill. 2d 572, 574, 218 N.E.2d 97; see generally *People v. Gates* (1981), 85 Ill. 2d 376, 423 N.E.2d 887.) If the informer is a private citizen, not from the criminal milieu, prior reliability or independent corroboration may be unnecessary. (See *People v. Beto* (1980), 86 Ill. App. 3d 622, 628, 408 N.E.2d 293.) In the instant case, however, there is no reason to believe that Pickett was an ordinary citizen volunteering information. The record shows Pickett's address as that of the county jail, and indicates that he was interviewed in the presence of a public defender. The State cites *People v. Fisher* (1979), 76 Ill. App. 3d 331, 395 N.E.2d 54, for the proposition that an informer is to be presumed an ordinary citizen unless the facts indicate otherwise. (See *Fisher*, at 334.) While this may be a correct statement of the law, the record here contains sufficient contrary indications to rebut the presumption of "ordinariness." We hold that Pickett's reliability must be measured by the standard applied to informants from the criminal milieu.

■■ The State offered no proof of Pickett's prior reliability as an informant. Therefore, if Pickett's information is to support probable cause to arrest defendant, the arresting officers needed independent corroboration of Pickett's tip. The arresting officers noted that defendant's address and physical description corresponded to the information supplied by Pickett, but this fact tends to prove only that Pickett knew defendant. It does not link defendant to the crime. (*Cf. Gates*, at 390 (corroboration of innocent activity does not support a finding of probable cause).) The corroborating information must support the conclusion that the arrestee, and not another, has committed an offense. See *People v. Andreat* (1979), 76 Ill. App. 3d 948, 951, 395 N.E.2d 728.

The *Andreat* holding also refutes the argument that information regarding the victim's missing .25-caliber pistol constitutes adequate corroboration of Pickett's tip. The police had information from the victim's co-worker that the victim always carried a nickel-plated .25-caliber pistol in a brown suede holster with a belt clip. This weapon was not found on the victim's body. Pickett described a similar pistol that defendant allegedly displayed at Pickett's home. Nevertheless, while the information tends to corroborate the fact that Pickett knew of the missing pistol, the information does nothing to buttress Pickett's naming of defendant as the robber. Pickett could have learned of the pistol from other sources and, as long as only Pickett linked the pistol to defendant, Pickett's charge is without adequate corroboration. In *Whiteley v. Warden* (1971), 401 U.S. 560, 567, 28 L. Ed. 2d 306, 312, 91 S. Ct. 1031, 1036, the United States Supreme Court stated:

"[W]here the initial impetus for an arrest is an informer's tip,

information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not adequately be supported by the tip alone. [Citations.] But the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the *arrestees* committed the felony \* \* \*." (Emphasis added.)

*People v. Vogel*, an Illinois case, sounds a similar theme:

"Independent corroboration of the information provided by an informant is of little moment when the information as corroborated, fails to communicate knowledge from which the arresting officer could reasonably believe that a *particular individual* is guilty of a criminal offense." (Emphasis added.) *People v. Vogel* (1978), 58 Ill. App. 3d 910, 913, 374 N.E.2d 1152.

In the instant case, Pickett was an informer of unproven reliability and no information, other than that offered by Pickett, tended to link defendant to the attempted robbery of the liquor store. Under the rule of *People v. McClellan*, defendant's arrest was effected without probable cause. The State has cited a recent appellate decision, *People v. Henderson* (1981), 96 Ill. App. 3d 232, 421 N.E.2d 219, in support of its contention that the arresting officers had sufficient corroboration of Pickett's information. One of the corroborating elements in *Henderson* was the fact that the informer had information on the crimes not available to the general public. It appears that the court in *Henderson* failed to consider the requirement that the corroborating evidence must link the arrestee to the crime. On this basis, we decline to follow the reasoning in *Henderson*. In any event, the facts in *Henderson* are distinguishable insofar as the arresting officers in that case independently corroborated a portion of the tip immediately prior to the defendant's arrest. The informer in *Henderson* described a chrome-plated revolver which had been taken in a robbery (one of a series of tavern holdups in which the defendant was a suspect). When police arrived at the defendant's home, he pointed a chrome-plated revolver at them. The officers' own observations thus corroborated the tip, and provided independent evidence linking the defendant to the crimes.

■■ The next question is whether defendant's statements were obtained by exploitation of the illegal arrest, or were obtained " 'by means sufficiently distinguishable to be purged of the primary taint.' " (*Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.) Defendant received *Miranda* warnings several times prior to his oral statements, but such admonitions do not, of themselves, attenuate the taint of an illegal arrest. (*Brown v. Illinois* (1975), 422 U.S. 590, 603, 45 L. Ed. 2d 416, 426, 95 S. Ct. 2254, 2261.) *Brown* supplies the factors used to evaluate whether an admission is the product of an illegal arrest. These

factors include the temporal proximity of the arrest to the confession, the presence of intervening circumstances, and the purpose of the police misconduct. (See *Brown*, 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 426, 95 S. Ct. 2254, 2261.) The State argues that the long time lag between defendant's arrest and his statement is evidence of attenuation. In *Dunaway v. New York*, Mr. Justice Stevens suggested that, absent intervening circumstances, a prolonged detention may be a more severe "exploitation of the illegal arrest" than a brief detention culminating in an admission. (See *Dunaway*, 442 U.S. 200, 220, 60 L. Ed. 2d 824, 840, 99 S. Ct. 2248, 2260 (Stevens, J., concurring).) The State also stresses the noncoercive nature of defendant's detention and the fact that he was given food and cigarettes. This argument indicates that the State has confused the element of voluntariness with the element of causation. (See *Dunaway*, 442 U.S. 200, 219, 60 L. Ed. 2d 824, 840, 99 S. Ct. 2248, 2260.) The issue is not whether defendant's statements were coerced; the issue is whether the statements were a proximate result of his arrest without probable cause.

■■ In the case at bar, it is apparent that police attention had focused on defendant as a result of Pickett's tip. Based on this information, the police arrested defendant and questioned him until he made a statement. These circumstances reveal a direct causal connection between the arrest and the admission. Unlike cases where the defendant was taken into custody for an unrelated reason (*cf. People v. Gabbard* (1979), 78 Ill. 2d 88, 98, 398 N.E.2d 574 (arresting officer was unaware of the crime concerning which defendant later made an admission; defendant's statement held attenuated)), this case reveals an illegal arrest, followed by questioning that produced a desired result: admissions sufficient to support a conviction. In view of all the circumstances, defendant's statements cannot be considered sufficiently dissociated from the taint of his illegal arrest, and his statements should therefore have been suppressed.

In view of our conclusion that the motion judge erred in denying the motion to suppress defendant's post-arrest statements, we do not reach defendant's contention that his sentence is excessive. The judgment of the Circuit Court of Cook County is reversed.

Reversed.

HARTMAN, P. J., and DOWNING, J., concur.